UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| _____ :<br><br>KISWIRE INC.,                              :<br>                    Plaintiff,            :<br>                                          :<br>          and                             :<br>                                          :<br>KISWIRE PINE BLUFF INC.,                  :<br>                                          :<br>          Consolidated Plaintiff,        :<br>                                          :<br>          v.                              :<br>                                          :<br>UNITED STATES,                            :<br>                                          :<br>          Defendant.                      :<br>_____ : | Consol. Court No. 22-00181 |

## <u>ORDER</u>

Upon consideration of defendant's cross-motion for summary judgment and response in opposition to plaintiffs' motion for summary judgment, and upon consideration of all other papers and proceedings had herein; it is hereby

**ORDERED** that defendant's cross-motion for summary judgment is granted;

**ORDERED** that plaintiffs' motion for summary judgment is denied; and it is further

**ORDERED** that judgment is entered for defendant and this action is dismissed.


                                        _____
                                                    JUDGE


Dated: _____
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

_____

|                                         |    |                          |
|-----------------------------------------|----|--------------------------|
| KISWIRE INC.,                           | :  |                          |
|                         Plaintiff,      | :  |                          |
|                                         | :  |                          |
|                  and                    | :  |                          |
|                                         | :  | Consol. Court No. 22-00181 |
| KISWIRE PINE BLUFF INC.,                | :  |                          |
|                                         | :  |                          |
|                  Consolidated Plaintiff,| :  |                          |
|                                         | :  |                          |
|                  v.                     | :  |                          |
|                                         | :  |                          |
| UNITED STATES,                          | :  |                          |
|                                         | :  |                          |
|                  Defendant.             | :  |                          |

_____

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT), defendant, the United States, respectfully moves for an order granting defendant's cross-motion for summary judgment, denying plaintiffs' motion for summary judgment, and dismissing this action. The reasons for our cross-motion are set forth in the accompanying memorandum, defendant's response to plaintiffs' USCIT Rule 56.3 statement of undisputed material facts, and defendant's USCIT Rule 56.3 statement of additional undisputed materials facts.

WHEREFORE, defendant respectfully requests that an order be entered granting defendant's cross-motion for summary judgment, denying plaintiffs' motion for summary

judgment, entering judgment for defendant, dismissing this action, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

Of Counsel:

Alexandra Khrebtukova
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

/s/ Mathias Rabinovitch
MATHIAS RABINOVITCH
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
(212) 264-0484
*Attorneys for defendant*

Dated: March 25, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

———————————————————————————

|  |  |  |
|---|---|---|
| KISWIRE INC., | : | |
| Plaintiff, | : | |
| | : | |
| and | : | |
| | : | Consol. Court No. 22-00181 |
| KISWIRE PINE BLUFF INC., | : | |
| | : | |
| Consolidated Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

———————————————————————————

### MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFFS' <u>MOTION FOR SUMMARY JUDGMENT</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

Of Counsel:

Alexandra Khrebtukova
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

MATHIAS RABINOVITCH
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
(212) 264-0484
*Attorneys for defendant*

Dated: March 25, 2024

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

    A.  The Subject Entries ............................................................................... 2

    B.  The Antidumping Duty Order .............................................................. 3

    C.  The Changed Circumstances Review ................................................... 4

    D.  The First Administrative Review .......................................................... 8

    E.  CBP's Treatment of Plaintiff's Entries ............................................... 9

QUESTION PRESENTED ................................................................................... 12

SUMMARY OF ARGUMENT ............................................................................ 12

ARGUMENT ...................................................................................................... 14

I.    STANDARD OF REVIEW ............................................................................ 14

II.   COMMERCE INSTRUCTED CBP TO ASSESS ANTIDUMPING DUTIES
      AT THE CASH DEPOSIT RATE ................................................................. 15

III.  MESSAGE NO. 9113302 DOES NOT APPLY TO THE SUBJECT ENTRIES ................. 17

    A.  The Subject Entries Do Not Meet the Terms of Message No. 9113302 ......................... 18

    B.  If Message No. 911302 Applied to the Subject Entries, the Removal of
        Suspension of Liquidation in the CCR Triggered Deemed Liquidation
        by Operation of Law in October 2019 ................................................ 21

    C.  Commerce's Instructions to CBP Implementing the *CCR Final Results*
        Provided Unambiguous and Public Notice ......................................... 26

        1.  Kiswire Misunderstands the "Unambiguous" Requirement ..................... 27

        2.  The End-Use Certification Requirement for the Subject Entries Was
           Addressed by the CCR Final Results ............................................ 29

        3.  CPB's Treatment of The Entries Is Irrelevant to The Notice of
           Lifting of Suspension ................................................................ 33

CONCLUSION .................................................................................................. 36

# TABLE OF AUTHORITIES

**Cases**

*Am. Nat. Fire Ins. Co. v. United States*,
  441 F. Supp. 2d. 1275 (Ct. Int'l Trade 2006) ........................................................................ 16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................................ 14

*Aspects Furniture International Inc. et al. v. United States*,
  510 F. Supp. 3d 1353 (Ct. Int'l Trade 2021)
  *aff'd*, 42 F.4th 1366 (Fed. Cir. 2022) .................................................................................. 34

*Aspects Furniture Int'l, Inc. v. United States*,
  42 F.4th 1366 (Fed. Cir. 2022) ..................................................................................... *passim*

*Belgium v. United States*,
  551 F.3d 1339 (Fed. Cir. 2009) .............................................................................................. 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................................ 14

*Cemex, S.A. v. United States*,
  384 F.3d 1314 (Fed. Cir. 2004) ......................................................................................... 22, 28

*Consolidated Bearings Co. v. United States*,
  348 F.3d 997 (Fed. Cir. 2003) ................................................................................................ 33

*Fraserview Remanufacturing Inc. v. United States*,
  2024 WL 322292 .................................................................................................................... 34

*Fujitsu Gen. Am., Inc. v. United States*,
  283 F.3d 1364 (Fed. Cir. 2002) ................................................................................... 22, 28, 34

*Hynix Semiconductor Am., Inc. v. United States*,
  414 F. Supp. 2d 1317 (Ct. Int'l Trade 2006) ......................................................................... 16

*International Trading Co. v. United States*,
  281 F.3d 1268 (Fed. Cir. 2002) .......................................................................................... 24, 27

*Int'l Trading Co. v. United States*,
  412 F.3d 1303 (Fed. Cir. 2005) .......................................................................................... 25, 34

*Itochu Bldg. Prod. v. United States*,
  2014 WL 1363999 (Ct. Int'l Trade 2014) ............................................................................ 32, 33

*Koyo Corp. of U.S.A. v. United States,*
    497 F.3d 1231 (Fed. Cir. 2007) ................................................................. 24, 25

*Marine Harvest (Chile) S.A. v. United States,*
    244 F. Supp. 2d 1364 (2002) ......................................................................... 32

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ....................................................................................... 15

*Mitsubishi Elecs. Am., Inc. v. United States,*
    44 F.3d 973 (Fed. Cir. 1994) ................................................................... 15, 16

*Phone-Mate, Inc. v. United States,*
    690 F.Supp. 1048 (Ct. Int'l Tr. 1988)
    *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) ........................................................... 14

*Shinyei Corp. of Am. v. United States,*
    355 F.3d 1297 (Fed. Cir. 2004) ..................................................................... 32

*Texas Apparel Co. v. United States,*
    698 F. Supp. 932 (Ct. Int'l Trade 1988),
    *aff'd* 883 F.2d 66 (Fed. Cir. 1989) ................................................................. 14

*United States v. Pan Pac. Textile Group Inc.,*
    276 F. Supp. 2d 1316 (Ct. Int'l Tr. 2003) ..................................................... 15

**Statutes**

19 U.S.C. § 1504 ................................................................................................. 25

19 U.S.C. § 1504(d) ...................................................................................... *passim*

19 U.S.C. § 1505(c) ............................................................................................ 21

19 U.S.C. § 1514 ........................................................................................... 24, 25

19 U.S.C. § 1514(a) .................................................................................. 12, 25, 26

19 U.S.C. § 1514(a)(4) ....................................................................................... 25

19 U.S.C. § 1514(b) ............................................................................................ 33

19 U.S.C. § 1514(c)(3)(A) .................................................................................. 25

19 U.S.C. § 1515(b) ............................................................................................ 11

19 U.S.C. § 1516a ............................................................................................... 33

19 U.S.C. § 1516a(a)(2) ................................................................................ 33

19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (B)(iii) ................................................... 32

19 U.S.C. § 1557 ............................................................................................ 2

19 U.S.C. § 1675(b) ...................................................................................... 32

28 U.S.C. 1581(c) ......................................................................................... 32

28 U.S.C. 1581(i)(4) ..................................................................................... 32

28 U.S.C. § 2640 ........................................................................................... 14

Section 2103 of the Miscellaneous Trade and Technical Corrections Act
of 2004, Pub. Law 108-429, 118 Stat. 2434 (2004) ..................................... 25

**Regulations**

19 C.F.R. Part 144 .......................................................................................... 2

19 C.F.R. § 24.25 .......................................................................................... 19

19 C.F.R. § 24.25(a) ..................................................................................... 19

19 C.F.R. § 101.9(b) ..................................................................................... 20

19 C.F.R. § 141.0a(b) ............................................................................. 18, 20

19 C.F.R. § 141.0a(d) ................................................................................... 19

19 C.F.R. § 144.38 .......................................................................................... 2

19 C.F.R. § 159.52 ..................................................................................... 2, 11

19 C.F.R. § 351.304(b) ................................................................................. 31

19 C.F.R. §§ 24.25(e) ........................................................................ 19, 20, 21

19 C.F.R. §§ 141.0a(d)(2) ....................................................................... 20, 21

19 C.F.R. §§ 141.101 .............................................................................. 19, 20

19 C.F.R. §§ 142.3(b) ................................................................................... 19

19 C.F.R. §§ 142.12(a)(1) ............................................................................ 19

19 C.F.R. §§ 144.11 ................................................................................................ 2

19 C.F.R. §§ 144.12 ................................................................................................ 2

19 C.F.R. §§ 144.12(b) .......................................................................................... 19

*Carbon and Alloy Steel Wire Rod From Italy, the Republic of Korea, Spain, the Republic of Turkey,    and the United Kingdom: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey*, 83 Fed. Reg. 23,417 (Dep't Commerce May 21, 2018) ........................................ 3, 15

*Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Initiation and Expedited Preliminary Results of Antidumping Duty Changed Circumstances Review*, 83 Fed. Reg. 55,694 (Dep't Commerce November 7, 2018) ........................................ 5

*Carbon and Alloy Steel Wire Rod From the Republic of Korea and the United Kingdom: Notice of Final Results of Antidumping Duty Changed Circumstances Review*, 84 Fed. Reg. 13,888 (Dep't Commerce Apr. 8, 2019) ............................................ *passim*

*Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review*; 2017–2019, 86 Fed. Reg. 15,461 (Dep't Commerce Mar. 23, 2021) ........................................ 8, 15

*Post-Summary Corrections to Entry Summaries Filed in ACE Pursuant to the ESAR IV Test*, 76 Fed. Reg. 37,136 (June 24, 2011) .................................................................... 20

*Post-Summary Corrections to Entry Summaries Filed in ACE Pursuant to the ESAR IV Test: Modifications and Clarifications*, 78 Fed. Reg. 69,434 (Nov. 19, 2013). .................... 20, 21

**Harmonized Tariff Schedule of the United States**

Chapter 72

    Heading 7213 ........................................................................................................ 1

      Subheading 7213.91.30 ...................................................................................... 1

**Rules**

USCIT Rule 56 ........................................................................................................ 1

USCIT Rule 56(a) .................................................................................................. 14

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

_____
                                                          :
KISWIRE INC.,                                             :
                         Plaintiff,                       :
                                                          :
            and                                           :
                                                          :         Consol. Court No. 22-00181
KISWIRE PINE BLUFF INC.,                                  :
                                                          :
                 Consolidated Plaintiff,                  :
                                                          :
            v.                                            :
                                                          :
UNITED STATES,                                            :
                                                          :
                 Defendant.                               :
_____                  :

**MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade

(USCIT), defendant, United States (the Government), hereby submits this memorandum in

support of its cross-motion for summary judgment and response in opposition to plaintiffs',

Kiswire Inc. (KI) and Kiswire Pine Bluff Inc. (KPB) (collectively, Kiswire), motion for

summary judgment and brief in support.

## <u>INTRODUCTION</u>

The merchandise at issue in this action consists of steel wire rod produced or exported by

POSCO, a Korean steel producer and exporter, and imported by Kiswire into the United States

between September and December of 2018.  The subject merchandise is classified under

subheading 7213.91.30 of the Harmonized Tariff Schedule of the United States (HTSUS).  The

parties do not dispute the classification of the subject merchandise under subheading 7213.91.30,

HTSUS, but the assessment of antidumping duties on Kiswire's entries of steel wire rod from the Republic of Korea (Korea).

## BACKGROUND

### A.     The Subject Entries

Kiswire imported the subject merchandise under three consumption entries and three warehouse entries, from which Kiswire then made withdrawals for consumption covered by a total of fifteen withdrawal entries.[1]  Although there were fifteen withdrawals covering the merchandise in the three warehouse entries, Kiswire only challenges the assessment of duties resulting from nine of the fifteen withdrawal entries.  *See* Summons, No. 22-00285, ECF. No. 1.[2]

Kiswire Pine Bluff Inc. filed two of the warehouse entries: Warehouse Entry No. DQ7-0221316-5 was filed on September 5, 2018, and Warehouse Entry No. DQ7-0221382-7 on September 6, 2018.  The merchandise in the first warehouse entry was withdrawn between September 5 and September 28, 2018, under cover of seven withdrawal entries.  The merchandise in the second warehouse entry was withdrawn between September 7 and September 28, 2018, under cover of four warehouse entries.

---

[1] Warehouse entries operate differently from standard consumption entries.  *See generally* 19 C.F.R. Part 144; *see also* 19 U.S.C. § 1557.  When merchandise is entered for warehousing, U.S. Customs and Border Protection (CBP) does not collect estimated duties.  19 C.F.R. §§ 144.11, 144.12.  When merchandise is removed from warehousing for consumption in the United States, importers file a withdrawal entry and deposit estimated duties based on the amount of merchandise withdrawn from the warehouse.  19 C.F.R. § 144.38.  When all merchandise covered by a warehouse entry is withdrawn, the warehouse entry, not the withdrawal entry, will be liquidated.  *See* 19 C.F.R. § 159.52.  As with other entries, unless extended or suspended, warehouse entries can be liquidated by operation of law.  *See* 19 U.S.C. § 1504; 19 C.F.R. § 159.52.

[2] Plaintiffs identify the three warehouse entries along with only nine withdrawal entries on its summons in Court No. 22-00285.

Kiswire Inc. filed the third warehouse entry, Warehouse Entry No. DQ7-0221459-3, on September 11, 2018. KI subsequently filed four withdrawal entries between September 11 and September 27, 2018, with the last withdrawal occurring on September 27, 2018.

In addition, KI imported the subject merchandise under cover of three standard consumption entries. Entry No. DQY-0222391-7 was filed on October 15, 2018; Entry No. DQ7-0223423-7 on November 16, 2018; and Entry No. DQ7-0224287-5 on December 14, 2018.

The warehouse, withdrawal, and consumption entries subject to this action (subject entries) are summarized in the following table:

| Entry Type | | Entry Number | Entry Date |
|---|---|---|---|
| Warehouse | | DQ7-0221316-5 | 9/05/2018 |
| | Withdrawal | DQ7-0221399-1 | 9/06/2018 |
| | Withdrawal | DQ7-0221785-1 | 9/18/2018 |
| | Withdrawal | DQ7-0221999-8 | 9/26/2018 |
| | Withdrawal | DQ7-0222064-0 | 9/28/2018 |
| Warehouse | | DQ7-0221382-7 | 9/06/2018 |
| | Withdrawal | DQ7-0222061-6 | 9/28/2018 |
| Warehouse | | DQ7-0221459-3 | 9/11/2018 |
| | Withdrawal | DQ7-0221433-8 | 9/11/2018 |
| | Withdrawal | DQ7-0221727-3 | 9/14/2018 |
| | Withdrawal | DQ7-0222001-2 | 9/26/2018 |
| | Withdrawal | DQ7-0222045-9 | 9/27/2018 |
| Consumption | | DQ7-0222391-7 | 10/15/2018 |
| Consumption | | DQ7-0223423-7 | 11/16/2018 |
| Consumption | | DQ7-0224287-5 | 12/14/2018 |

### B.    The Antidumping Duty Order

At the time of entry, the subject merchandise was covered by an antidumping duty investigation and order on carbon and alloy steel wire rod from Korea. *See Carbon and Alloy Steel Wire Rod From Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey*, 83 Fed. Reg. 23,417 (Dep't Commerce

May 21, 2018) (AD Order).  Commerce instructed CBP to suspend liquidation of all relevant entries of wire rod from Korea and established a weighted-average dumping margin and cash-deposit rate of 41.10 percent *ad valorem* for such entries of wire rod exported or produced by POSCO.  *Id.* at 23,418; *See* Compl. Attach. 1, No. 22-00181, ECF No. 13 at 23 (Message No. 8142301 at ¶ 3 (May 22, 2018)).  The all-others rate for products from Korea was also set at 41.10 percent.  *Id.* at 23,418.  Accordingly, CBP collected cash deposits of 41.10 percent *ad valorem* and suspended liquidation of the subject entries under AD case number A-580-891.

### C.     The Changed Circumstances Review

On September 17, 2018, domestic interested parties, including the petitioners from the underlying antidumping duty investigation, requested that Commerce initiate a changed circumstances review (CCR) to revoke, in part, the AD Order on wire rod from Korea, to be effective for merchandise entered on or after May 21, 2018.  *See* Letter from domestic industry re: "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Petitioners' Request for Changed Circumstances Review and Partial Revocation Request," dated September 17, 2018 (CCR Request) (Government's Exhibit (Gov't Ex.) 1); *see also Carbon and Alloy Steel Wire Rod From the Republic of Korea and the United Kingdom: Notice of Final Results of Antidumping Duty Changed Circumstances Review*, 84 Fed. Reg. 13,888 (Dep't Commerce Apr. 8, 2019) (CCR Final Results).  The domestic industry indicated that, after discussions with tire cord producers in the United States (including Kiswire America Inc.), the industry lacked interest in continuing AD duties on certain high carbon wire rod for use in producing tire cord, *i.e.*, grade 1078 or higher tire cord quality wire rod.  *CCR Request* at 2, 3. The request also included a proposed scope of the merchandise subject to the revocation.  *Id.* at 5.  This proposed scope introduced a requirement that importers "attach, as a condition of entry,

a certification of end use that certifies that the Grade 1078 and above tire cord quality wire rod

will be used only in the production of tire cord wire." *Id.* at 5.  It also included a proposed end-

use certification form as an attachment to the request for importers to complete to benefit from

the revocation.  *See id.* at 8–9.

On November 7, 2018, Commerce initiated the CCR and published preliminary results.

*See Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom:*

*Initiation and Expedited Preliminary Results of Antidumping Duty Changed Circumstances*

*Review*, 83 Fed. Reg. 55,694 (Dep't Commerce November 7, 2018) (CCR Prelim Results)

(stating that it was "notifying the public" of its intent to partially revoke the AD Order).  In the

preliminary results, Commerce specified its intent to change the AD Order to include revisions to

the scope language and to require an end-use certification.  *Id.* at 55,695.  Both the proposed

revisions to the scope language and end-use certification form were included as attachments to

the preliminary results.  *See id.* at 55,695–6.  The proposed end-use certification was identical to

that proposed by the domestic industry.  *Compare id.* at 55,696 *with* CCR Request at Attach. 1.[3]

Commerce subsequently solicited interested party comments "on the appropriateness of

end-use certifications as a condition of entry" and solicited input from CBP.  *CCR Final Results*,

84 Fed. Reg. at 13,888; *see also* Commerce Letter "Re: Antidumping Duty Changed

Circumstances Reviews of Carbon and Alloy Steel Wire Rod from the Republic of Korea

(Korea) and the United Kingdom," dated December 21, 2018 (Solicitation of Comments Letter)

(Gov't Ex. 2).  The interested parties commented and agreed that end-use certifications for tire

cord wire rod need not be filed as "a condition of entry" – a term reserved for the admissibility of

_____

[3]  The two certifications contained one minor difference.  Whereas the domestic
interested party version made a reference to "the Department," the *CCR Prelim Results* version
changed the reference to "the Department of Commerce (Commerce)."

merchandise – but must be "required at the time of filing the Entry Summary" for merchandise to qualify for the exclusion from the order and be exempt from AD duties.  84 Fed. Reg. at 13,888; *see also* Letter from Bekaert Corporation, Kiswire America Inc., Kiswire Inc., Kiswire Pine Bluff, and Tokusen U.S.A., Inc., Re: "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom, Changed Circumstances Reviews: Response to Request for Comments," dated January 29, 2019 (Gov't Ex. 3) (Public Version); Letter from Nucor Corporation, Optimus Steel LLC, Keystone Consolidated Industries, and Charter Steel re: "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Comments on End-Use Certifications," dated February 19, 2019 (Gov't Ex. 4) (Public Version).

On April 8, 2019, Commerce revoked, in part, the AD Order as it relates to the importation of grade 1078 or higher tire cord quality wire rod.  *See CCR Final Results*, 84 Fed. Reg. 13,888.  The revocation was made retroactive to entries filed on or after May 21, 2018, the date of the AD Order.  *Id.*  As for end-use certifications, Commerce noted that it "received comments from interested parties and input from CBP on the administrability of these certifications for consideration for the final results of these proceedings."  *Id.* at 13,889. According to Commerce, the parties "agree[d] that end-use certifications for tire cord wire rod need not be filed as 'a condition' of entry but must be required at the time of filing the Entry Summary for tire cord wire rod to be exempt from AD duties."  *Id.*  As a result, Commerce provided that it was:

> changing the scope of the orders on wire rod from Korea and the United Kingdom by adding exclusion language related to grade 1078 and higher tire cord quality wire rod and requiring that a certification of end-use be filed with CBP at the time of the filing of the Entry Summary with CBP as provided in the Attachment to this notice.

*Id.* The "Attachment" provided with the *CCR Final Results* is the end-use certification form to be filed with CBP. This end-use certification form remained unchanged from the version included in Commerce's *CCR Prelim Results*.[4] In addition, Commerce added language to the scope of the order excluding "grade 1078 and higher tire cord quality wire rod to be used in the production of tire cord wire." *Id.*

Commerce added the following requirement to the scope of the AD Orders:

> Importers of tire cord quality wire rod are required to file with CBP, at the time of the Entry Summary filing with CBP, a certification of end use that certifies that the Grade 1078 and above tire cord quality wire rod will be used only in the production of tire cord wire. In instances where the importer of record is not the end-user, the importer must provide written notice of the end-use requirement and an official of the end user must also sign a copy of the certification filed with CBP at the time of Entry Summary.

*Id.* at 13,889. Commerce then described its intent to issue instructions to CBP:

> Because we determine that there are changed circumstances that warrant the revocation of the Orders, in part, we will instruct CBP to liquidate without regard to antidumping duties, all unliquidated entries of merchandise covered by this partial revocation that were entered, or withdrawn from warehouse, on or after May 21, 2018, for which an end-use certification was filed with CBP at the time of entry summary, and to refund all AD cash deposits on all such merchandise, with applicable interest.

*Id.* at 13,890.

On April 23, 2019, Commerce issued instructions directing CBP to "terminate the suspension of liquidation for all shipments of grade 1078 and higher tire cord quality wire rod,

---

[4] Despite the agreement of the interested parties during the administrative review that the certification need not be filed "as a *condition* of entry" but rather be filed "at the time of *entry summary*," the final end-use certification form still required that an importer (1) certify that "[t]his certification was completed at the time of *entry*" and (2) acknowledge that the importer "is required to provide this certification and supporting records, *upon entry*, to U.S. Customs and Border Protection (CBP)." *See* 84 Fed. Reg. at 13,890 (emphasis added).

entered, or withdrawn from warehouse, for consumption on or after 5/21/2018, for which an end-use certification was filed with CBP at the time of entry summary." *See* Compl. Attach. 2, No. 22-00181, ECF No. 13 at 31 (Message No. 9113302 at ¶ 3 (April 23, 2019)). Commerce further instructed that "[a]ll entries of the revoked product that were suspended on or after 5/21/2018 should be liquidated without regard to antidumping duties (i.e., refund all cash deposits)." Message No. 9113302 at ¶ 3. Moreover, the instructions indicate that the notice of the lifting of the suspension of liquidation of entries of the subject merchandise occurred on April 8, 2019, with the publication of the revocation in the Federal Register. *Id.* at ¶ 4; *see also* 84 Fed. Reg. at 13,888.

### D.    The First Administrative Review

On March 23, 2021, Commerce issued final results on the first administrative review (AR) of the AD Order on wire rod from Korea covering merchandise produced or exported by POSCO, the sole producer and exporter of the subject merchandise from Korea, for the period covering entries between October 31, 2017, and April 30, 2019. *See Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review*; 2017–2019, 86 Fed. Reg. 15,461 (Dep't Commerce Mar. 23, 2021) (1st AR Final Results). In its final results, Commerce determined that POSCO sold the subject merchandise at prices below normal value. *Id.* Accordingly, on April 28, 2021, Commerce issued liquidation instructions in Message No. 1118402 for all entries of carbon and alloy steel wire rod from Korea produced and exported by POSCO during the period of October 31, 2017 through April 30, 2019. *See* Compl. Attach. 15, No. 22-00181, ECF No. 13 at 71 (Message No. 1118402 at ¶ 3 (April 28, 2021)). In paragraph 1, Commerce instructed CBP to assess an antidumping liability, based on the weighted-average dumping margin, equal to 0.94 percent for entries "imported or

sold to" POSCO America Corporation.  Message No. 1118402 at ¶ 1.  "For all other shipments

of carbon and alloy steel wire rod from Korea produced and exported by POSCO, entered, or

withdrawn from warehouse, for consumption during the period 10/31/2017 through 04/30/2019,

entered under case number A-580-891-001, and not covered by paragraph 1," Commerce

instructed CBP to "assess antidumping duties at the all-others rate in effect on the date of entry"

(*i.e.*, 41.10 percent).  *Id.* at ¶ 3.  The instructions also indicated that notice of the lifting of

suspension of liquidation of entries covered by paragraph 3 occurred on March 23, 2021, with

the publication of the *1st AR Final Results*.  *Id.* at ¶ 6.

### E.  CBP's Treatment of Plaintiffs' Entries

As indicated above, all Kiswire entries were properly suspended from liquidation pending

further instructions by Commerce.  *See* Message No. 8142301.  Also pursuant to Commerce's

instructions, Kiswire deposited AD duties at the all-others rate of 41.10 percent *ad valorem* upon

the filing of the consumption entries or, in the case of the warehoused merchandise, the filing of

the withdrawal entries.

After Commerce issued the *CCR Final Results*, on April 23, 2019, and May 3, 2019,

plaintiffs' broker emailed CBP regarding Kiswire's entries.  *See* Compl. Attach. 9, No. 22-

00181, ECF No. 12-1 at 134–36.  CBP did not respond to these emails.  On June 12, 2019, a

CBP Import Specialist initiated a Request for Information via a CBP Form 28 on four entries,

including two Kiswire entries at issue in this action.  *See* Plaintiffs' Exhibit (Pls. Ex.) 5 (Kiswire

Inc.'s Response to CF-28), ECF No. 34-5 at 2–5.  CBP sought entry packages, mill test

certificates, and other documents associated with the importation of the merchandise.  *Id.*

Kiswire responded with the requested documentation, including end-use certifications for two

entries in this action, on July 19, 2019.  *Id.* at 7–218.

No other action was taken on the entries at issue until December 17, 2019, when Kiswire attempted to file Post-Summary Corrections (PSCs) to its entries in the Automated Commercial Environment (ACE) to change the entry type and remove the applicability of any AD duty. Kiswire subsequently uploaded the end-use certifications to ACE's Document Image System (DIS). *See* Pls. Ex. 1 (Defendant's Responses to Plaintiffs' Requests for Admission), ECF No. 34-1 at 2–3; Pls. Ex. 2 (Kiswire's Response to Defendant's Interrogatories), ECF No. 34-2 at 5. The end-use certifications stated that Kiswire is the end-user of the imported merchandise and certified specific uses for the tire cord wire rod. The certifications also indicate that the Kiswire understands "that [it] is required to provide this certification and supporting records, upon entry, to [CBP]" and certifies that "[the] certification was completed at the time of entry." *See, e.g.*, Compl. Attach. 4, No. 22-00181, ECF No. 12-1 at 28. The certifications were signed by the purchasing manager of Kiswire and are dated on or around the dates of entry. *See* Pls. Ex. 2, ECF No. 34-2 at 6.

On July 15, 2021, CBP indicated to Kiswire that Message No. 9113302 did not apply to the entries at issue, and that the latter set of instructions in Message No. 1118402 applied to the subject entries. *See* Compl. Attach. 16, No. 22-00181, ECF No. 12-4 at 76. Those instructions directed CBP to assess the all-others rate of 41.10 percent *ad valorem* to plaintiffs' entries, which were produced and exported by POSCO but imported by Kiswire.

Accordingly, on September 20 and 21, 2021, CBP manually liquidated KI's three consumption entries as entered, with the assessment of AD duties at the cash deposit rate of 41.10 percent pursuant to Message No. 1118402. On December 14, 2021, KI filed a protest (Protest No. 1501-21-101162) challenging CBP's assessment of AD duties upon liquidation of

these consumption entries.  The protest was denied on January 11, 2022.  *See* Protest and Entry Papers from the Base Metals Center, No. 22-00181, ECF No. 14-1 at 1.

No official action was taken on the warehouse entries before the entries were deemed liquidated, which occurred six months after the publication of the removal of suspension of liquidation in the *1st AR Final Results*.  On March 16, 2022, KPB and KI each filed a protest (Protest Nos. 2002-22-100800 and 2002-22-100801, respectively) challenging the deemed liquidation of their warehouse entries.  On April 7, 2022, CBP denied Protest No. 2002-22-100801.[5]  On June 29, 2022, KPB requested accelerated disposition of Protest No. 2002-22-100800 and the protest was deemed denied on Friday July 29, 2022.[6]  *See* 19 U.S.C. § 1515(b).

KI filed an action challenging the denial of Protest No. 1501-21-101162 on June 22, 2022 (Civil Action No. 22-00181).  Summons, No. 22-00181, ECF No. 1.  KI and KPB filed an action challenging the denials of Protest Nos. 2002-22-100800, 2002-22-100801, and 2002-22-100819 on October 3, 2022 (Civil Action No. 22-00285).  Summons, No. 22-00285, ECF No. 1.  The Court consolidated these actions under lead Court No. 22-00181 on November 7, 2022.  Order, No. 22-00181, ECF 22; Order, No. 22-00285, ECF 16.  Following discovery, plaintiffs' moved for summary judgment.  *See* Plaintiffs' Motion for Summary Judgment and Brief in Support (Pls.

---

[5]  The ACE record had indicated that the final withdrawal for Warehouse Entry No. DQ7-0221459-3 had not occurred, such that it could not have been liquidated.  *See* 19 C.F.R. § 159.52.  But further submissions by KI demonstrated that a final withdrawal had indeed occurred on September 27, 2019.  The protest was nevertheless denied as untimely.  In response, KI filed Protest No. 2002-22-100819 on June 27, 2022, which was denied on July 20, 2022.

[6]  CBP posted the deemed liquidation of KPB's warehouse entries to the Official Bulletin Notice of Extension, Suspension and Liquidation on September 6, 2022.  But when CBP effectuated the change in ACE to reflect the deemed liquidation of Warehouse Entry No. DQ7-0221316-5, it did not account for the fact that the entered values asserted by KPB in the warehouse withdrawals differed from the entered values indicated in the warehouse entry.  *See* Defendant's Statement of Uncontested Material Facts (Def. SUMF) ¶ 5–8.  As a result, and inadvertently, KPB was issued a refund caused by the difference in valuation in the amount of $164,296.43 in duties plus $17,268.27 in interest.  Def. SUMF ¶ 8.

Br.), No. 22-00181, ECF No. 34 (Confidential), ECF No. 35 (Public) (Jan. 5, 2025); Plaintiffs'

Statement of Undisputed Material Facts (Pls. SUMF), No. 22-00181, ECF No. 34 (Confidential),

ECF No. 35 (Public) (Jan. 5, 2025).

The Government now cross-moves for summary judgment for the reasons stated below.

## QUESTION PRESENTED

Whether Kiswire can obtain refunds of antidumping duties on the subject entries of steel

wire rod from Korea pursuant to Commerce's *CCR Final Results* and instructions in Message

No. 9113302.

## SUMMARY OF ARGUMENT

Plaintiffs cannot obtain refunds on the assessment of antidumping duties on its entries of

steel wire rod from Korea.  Kiswire's entries were properly suspended from liquidation in

accordance with Commerce's AD Order.  Thereafter, on April 8, 2019, Commerce issued the

final results of a changed circumstances review on certain steel wire rod from Korea and, on

April 23, 2019, instructed CBP in Message No. 9113302 to liquidate entries "for which an end-

use certification was filed at the time of entry summary."  Kiswire did not file end-use

certifications at the time of entry summary for the entries at issue in this action.  The entries,

therefore, do not fall within the scope of the revocation in the *CCR Final Results*.

Even if these instructions were to apply, as plaintiffs argue, then because CBP did not

liquidate the entries within six months, the entries would have liquidated by operation of law

pursuant to 19 U.S.C. § 1504(d).  Accordingly, by Kiswire's own thesis, the subject entries

would have liquidated by operation of law at the cash deposit rate in October 2019, six months

after CBP received the notice of the lifting of suspension, and such liquidation would have

become final and conclusive in April 2020.  *See* 19 U.S.C. §§ 1504(d), 1514(a).  Because

Kiswire did not timely protest any deemed liquidation occurring in October 2019, the assessment of antidumping duties at the cash deposit rate of 41.10 percent *ad valorem* would be final and conclusive even if Kiswire were correct in its claim that the subject entries were covered by the *CCR Final Results* and subsequent instructions.

Nevertheless, because the *CCR Final Results* and subsequent instructions do not cover the entries at issue, CBP properly applied the subsequent instructions in Message No. 1118402, issued after the final results of the first administrative review of the AD Order.  In the *1st AR Final Results*, Commerce instructed CBP to assess a 41.10 percent *ad valorem* rate of antidumping duty for all imports of steel wire rod from Korea that we were not imported or sold to POSCO American Corporation, as is the case for the subject entries.

Whichever message applies, the final assessment of antidumping duties on the subject entries is at a 41.10 percent *ad valorem* antidumping duty rate.  If the first message applies (Message No. 9113302), as plaintiffs argue, then the entries deemed liquidated and became final at the all-others antidumping rate asserted at entry when Kiswire failed to timely protest the deemed liquidation.  If the second message applies (Message No. 1118402), as the Government argues, the entries were properly liquidated consistent with Commerce's subsequent instructions to liquidate the entries at the all-others rate.

In an attempt to reconcile the situation, plaintiffs argue that the suspension of liquidation was not lifted by unambiguous public notice until the *1st AR Final Results* and second set of instructions; yet, curiously, also conclude that the antidumping duty rate from the first set of instructions should still apply.  *See* Pls. Br. at 17–18, 22–31.  Plaintiffs first argue that the notice in the *CCR Final Results* did not explicitly and unambiguously apply to the subject entries and, more specifically, that the notice did not explicitly and unambiguously address how to liquidate

such entries. *See* Pls. Br. at 22–25. Second, plaintiffs argue that various actions by CBP

notifying plaintiffs that liquidation had not occurred also evinces an unambiguous notice under

19 U.S.C. § 1504(d). *See* Pls. Br. at 26–31. As discussed below, plaintiffs' arguments are

misguided and fail to persuade. The *CCR Final Results* provided public and unambiguous notice

that the suspension was removed for subject entries for which an end-user certification was filed

at the time of entry summary, which CBP was instructed to liquidate without AD duties. That

the notice did not address how to liquidate entries which did not meet this requirement (such as

the subject entries) does not make the notice ambiguous.

Finally, plaintiffs' arbitrary and capricious argument is meritless. *See* Pls. Br. at 31–33.

This matter involves the entries at issue in this case and is reviewed *de novo* before the court.

*See* 28 U.S.C .§ 2640. CBP followed the instructions provided by Commerce and liquidated the

subject entries accordingly.

## ARGUMENT

## I.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

USCIT Rule 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On a motion for

summary judgment, the Court determines whether there are any factual disputes that are material

to the resolution of the action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48

(1986); *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Trade 1988), *aff'd*,

883 F.2d 66 (Fed. Cir. 1989). "The court may not resolve or try factual issues on a motion for

summary judgment." *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l

Trade 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989). In determining whether a genuine issue of

fact exists, the Court reviews the evidence submitted, drawing all inferences against the moving

party.  *See United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1319 (Ct. Int'l

Trade 2003); *Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, there are no material facts in dispute to preclude summary judgment in favor of the

Government.

## II.    COMMERCE INSTRUCTED CBP TO ASSESS ANTIDUMPING DUTIES AT THE CASH DEPOSIT RATE

There is no question that the entries at issue in this case were covered by the antidumping

duty order on carbon and alloy steel wire rod from Korea and were suspended upon entry.  *AD*

*Order*, 83 Fed. Reg. 23,417.  The parties' dispute centers around which set of instructions from

Commerce to CBP should have been applied to the subject entries.  Plaintiffs believe that the

liquidation instructions in Message No. 9113302, implementing the *CCR Final Results*, should

have applied, whereas the Government believes that the correct liquidation instructions were in

Message No. 1118402, implementing the *1st AR Final Results*, as liquidated.

The parties agree that Commerce lifted the suspension of liquidation of the subject entries

on March 23, 2021, at the conclusion of the first administrative review.  *See 1st AR Final*

*Results*, 86 Fed. Reg. 15,461; Pls. Br. at 23.  When Commerce lifted the suspension, it also

issued liquidation instructions in Message No. 1118402.  Once suspension lifted, CBP was

required to apply those liquidation instructions within six months of receiving notice of the

removal of suspension (unless liquidation is extended) or otherwise the entries are deemed

liquidated by operation of law.

CBP performs merely "a ministerial function" in executing Commerce's instructions.

*Belgium v. United States*, 551 F.3d 1339, 1343 (Fed. Cir. 2009) (citing *Mitsubishi Elecs. Am.,*

*Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994)).  When Commerce instructs CBP to

liquidate an entry, CBP has no discretion in the matter. *See Mitsubishi*, 44 F.3d at 977; *see also Am. Nat. Fire Ins. Co. v. United States*, 441 F. Supp. 2d. 1275, 1287–88 (Ct. Int'l Trade 2006) ("[W]hen Commerce issued its instructions to Customs to liquidate the entry, Customs did not abuse its discretion in liquidating the entry on November 20, 1998, because it had no discretion in the matter."); *Hynix Semiconductor Am., Inc. v. United States*, 414 F. Supp. 2d 1317, 1327 (Ct. Int'l Trade 2006) ("When Customs follows liquidation instructions issued by Commerce subsequent to an administrative review, it is executing a purely ministerial duty over which it possesses no discretion.").

As relevant to the subject entries in this case, Commerce's instructions in Message No. 1118402 directed CBP as follows:

> For all shipments of carbon and alloy steel wire rod from Korea produced by POSCO, entered, or withdrawn from warehouse, for consumption during the period 10/31/2017 through 04/30/2019, entered under case number A-580-891-001, and not covered by paragraph 1,[7] assess antidumping duties at the all-others rate in effect on the date of entry, unless paragraph 4 or 5 applies.[8]

*See* Message No. 1118402 at ¶ 3.

The shipments covered by the subject entries in this case meet every condition specified by Commerce in these instructions: based on the invoices and mill certificates (and as plaintiffs themselves claim), the merchandise is steel wire rod from Korea produced by POSCO and imported by or sold to Kiswire that was entered for consumption within the period 10/31/2017

---

[7] Paragraph 1 covers "all shipments of carbon and alloy steel wire rod from [Korea] produced and exported by POSCO[,] . . . imported by or sold to . . . POSCO America Corporation[.]" *Id.* ¶ 1. The subject merchandise was not imported by or sold to POSCO America Corporation.

[8] Paragraph 4 covers merchandise entered from 10/31/2017 through 4/28/2018, and paragraph 5 covers merchandise entered from 4/29/2018 through 05/16/2018. The subject merchandise was entered after these dates.

through 04/30/2019—specifically, between September and December 2018—under case number A-580-891-001.  *See* Def. SUMF ¶ 2–4.  According to the terms of Message No. 1118402, therefore, the subject merchandise falls within the parameters of Commerce's instructions at paragraph 3, which instructs CBP to assess antidumping duties at the all-others rate in effect on the date of entry, *i.e.*, 41.10 percent.  Thus, when Commerce lifted the suspension of liquidation and issued instructions on March 23, 2021, the proper AD duty rate to be assessed on the subject entries was the all-others rate of 41.10 percent indicated paragraph 3 of Message No. 1118402.

Notwithstanding CBP's adherence to the terms of Message No. 1118402, Kiswire disagrees that Message No. 1118402, as applied, should result in the assessment of antidumping duties for the subject entries.  However, other than for merchandise and entries meeting the conditions of paragraph 1, 4, or 5 of the instructions in Message No. 1118402 (*see* footnotes 7 and 8 above), which Kiswire does not (and cannot) claim apply to the subject entries in this case, Commerce's  instructions in Message No. 1118402 do not provide for any exclusion from the directive to assess AD on entries meeting the conditions of paragraph 3 of those instructions.  Accordingly, Kiswire cannot recover AD duties for the subject entries because Message No. 1118402 instructed CBP to liquidate the entries at the cash deposit rate.  To claim that antidumping duties should not be assessed, Kiswire seeks to apply Commerce's determination (and instructions) that were issued years earlier in the changed circumstances review.  *See* Pls. Br. at 21–22.  But, as explained below, those earlier instructions do not apply, and Kiswire's time to claim otherwise has passed.

## III.    MESSAGE NO. 9113302 DOES NOT APPLY TO THE SUBJECT ENTRIES

Commerce concluded a changed circumstances review with the publication in the Federal Register of the *CCR Final Results* on April 8, 2019.  84 Fed. Reg. 13,888.  On April 23, it issued

instructions to CBP pursuant to the *CCR Final Results*.  These instructions do not apply to the subject entries because a condition in the instructions was not met, that is, end-use certifications were not filed at the time of entry summary.  Moreover, if the instructions in Message No. 9113392 did apply to the subject entries, then the entries would have liquidated by operation of law in October of 2019 and plaintiffs' protests would be untimely.

A.    **The Subject Entries Do Not Meet the Terms of Message No. 9113302**

In Commerce's *CCR Final Results*, Commerce stated that because changed circumstances warranted a partial revocation of the AD Order, it will:

> instruct CBP to liquidate without regard to antidumping duties, all unliquidated entries of merchandise covered by this partial revocation that were entered, or withdrawn from warehouse, on or after May 21, 2018, *for which an end-use certification was filed with CBP at the time of entry summary*, and to refund all AD cash deposits on all such merchandise, with applicable interest.

84 Fed. Reg. 13,890 (emphasis added).  In the corresponding message to CBP, Commerce instructed CBP to:

> terminate the suspension of liquidation for all shipments of grade 1078 and higher tire cord quality wire rod entered, or withdrawn from warehouse, for consumption on or after 5/21/2018, *for which an end-use certification was filed with CBP at the time of entry summary*.  All entries of the revoked product that were suspended on or after 5/21/2018 should be liquidated without regard to antidumping duties (i.e., refund all cash deposits).

Message No. 9113302 at ¶ 3 (emphasis added).  The instructions to CBP mirror those in Commerce's final results of the CCR, requiring lifting of suspension only for those suspended entries "for which an end-use certification was filed with CBP at the time of entry summary."

CBP regulations define "entry summary" as documentation or data "necessary to enable CBP to assess duties, and collect statistics on imported merchandise, and determine whether other requirements of law or regulation are met."  19 C.F.R. § 141.0a(b).  CBP regulations define

"filing" with respect to an "entry summary" as "[t]he delivery to CBP, including electronic

submission to the Automated Commercial Environment (ACE) or any other CBP-authorized

electronic data interchange system, *together with the deposit of estimated duties*, of the entry

summary documentation or data required to assess duties, collect statistics, and determine

whether other requirements of law and regulation are met[.]"  *Id.* § 141.0a(d) (emphasis added).[9]

The regulations require that (except in certain specified cases not relevant here) estimated

duties "shall either be deposited with the Customs officer designated to receive the duties at the

time of the filing of the entry documentation or the entry summary documentation when it serves

as both the entry and entry summary, or be transmitted to Customs according to the statement

processing method as described in § 24.25 of this chapter."  *Id.* § 141.101.  The statement

processing method described in § 24.25 refers to "a voluntary automated program for

participants in the Automated Broker Interface (ABI), allowing the grouping of entry/entry

summaries and entry summaries on a daily basis," such that "[t]he related duties, taxes, fees, and

interest may be paid with a single payment."  19 C.F.R. § 24.25(a).  As a condition of

participation in the program, the regulations require that "entry summaries must be designated

for statement processing within 10 working days after the date of entry," providing that "[i]t is

the responsibility of the ABI filer using statement processing to ensure that the elected scheduled

statement date is within that 10-day timeframe."  *Id.* § 24.25(e).

Thus, in accordance with CBP's regulations, as currently in effect and as in effect at the

time of Commerce's instructions in Message No. 9113302, the "time of entry summary filing"

---

[9]  The regulations provide that the entry summary may be filed at the time of entry.  *See* 19 C.F.R. §§ 142.3(b), 142.12(a)(1).  In those instances, the CBP Form 7501 or its electronic equivalent serves as both the entry and entry summary documentation.  Otherwise, the entry summary documentation must be filed within 10 working days after the time of entry.  *Id.* § 142.12(b).

means the date on which the required entry summary documentation or data was properly

submitted to CBP, together with the deposit of estimated duties, which is required to occur

within 10 working days after the date of entry.  *See* 19 C.F.R. §§ 24.25(e), 141.0a(b),

141.0a(d)(2), and 141.101.  The entry summary date is indicated in Box 3 of the Entry Summary

– Form 7501 and on the entry summary page in ACE.

In light of the end-use certification filing requirement in Message No. 9113302, CBP

could not apply those instructions to the subject entries in this case.  While the subject entries

and entry summaries were filed between September 2018 and December 2018, Kiswire did not

file the end-use certifications with CBP at that time.  *See* Def. SUMF ¶ 1; Pls. SUMF ¶ 4.

Kiswire's end-use certifications were thus not filed with CBP at the time of entry summary filing

for any of the subject entries.

Plaintiffs claim that the attempted filing of PSCs in December 2019 somehow altered the

time of entry summary filing for these entries because "[a] post summary correction 'is

essentially a new entry summary.'"  *See* Pls. Br. at 10–11.  But the filing of a PSC cannot change

the time of the entry summary filing.  The PSC procedure is part of a National Customs

Automation Program test under 19 C.F.R. § 101.9(b) concerning new ACE Entry Summary,

Accounts and Revenue capabilities, called the "ESAR IV" test.  *See Post-Summary*

*Corrections to Entry Summaries Filed in ACE Pursuant to the ESAR IV Test*, 76 Fed. Reg.

37,136 (June 24, 2011).  As modified, the conditions of the test provide that, among the data

elements that *cannot* be changed using PSC procedures (and which will cause CBP to reject

an attempted PSC), are the entry date as well as the dates related to the statement processing

method for the deposit of estimated duties.  *See id.* at 37,138; *Post-Summary Corrections to*

*Entry Summaries Filed in ACE Pursuant to the ESAR IV Test: Modifications and*

*Clarifications*, 78 Fed. Reg. 69,434–35 (Nov. 19, 2013). Because both the date of entry and the dates related to the statement processing method for the deposit of estimated duties together define the parameters for the required time of entry summary filing, *see* 19 C.F.R. §§ 141.0a(d)(2), 141.101, and 24.25(e), the time of entry summary filing also cannot be changed by PSC.[10] Consistent with this limitation, plaintiffs' December 2019 PSCs did not (and could not) change the date of entry summary filings for the subject entries.

Moreover, plaintiffs complain that "Customs did not issue instructions to importers explaining how importers were to provide the required end-use certification to avail themselves of the revocation of the wire rod order for qualifying entries made prior to April 8, 2019, the date of publication of the revocation and imposition of end-use certification requirement." Pls. Br. at 9. But CBP was not required to issue any such instructions. Rather, Commerce's instructions to CBP in Message No. 9113302 simply instructed CBP to terminate the suspension of liquidation, and liquidate without antidumping duties, for only those entries "for which an end-use certification was filed with CBP at the time of entry summary." Because none of the subject entries had an end-use certification that was filed with CBP at the time of the entry summary, the instructions in Message No. 9113302 did not apply.

**B.    If Message No. 911302 Applied to the Subject Entries, the Removal of Suspension of Liquidation in the CCR Triggered Deemed Liquidation by Operation of Law in October 2019**

Plaintiffs argue that Commerce's instructions to CBP in Message No. 9113302 should be applied to the subject entries. *See* Pls. Br. at 21–22. But if plaintiffs were correct that the *CCR*

---

[10]   Because interest on underpaid of duties accrues "from the date the importer of record is required to deposit estimated duties," 19 U.S.C. § 1505(c), if importers were permitted to change by PSC the time of entry summary filing, which is linked to when estimated duties must be deposited, this would in effect permit the importer to delay the date on which interest starts to accrue simply by filing a PSC, even where (as here) the PSC is subsequently rejected by CBP.

*Final Results* and instructions in Message No. 9113302 applied to the subject entries, then the publication in the Federal Register of the notice of the removal of suspension of liquidation for the entries covered by the *CCR Final Results* would have triggered the six-month clock for liquidation under 19 U.S.C. § 1504(d).  Consequently, any entries that were in fact covered by the *CCR Final Results* and Commerce's instructions in Message No. 9113302, and that were not liquidated by CBP within that time frame, would have deemed liquidated by operation of law and any timely protest against such deemed liquidation would have been required to have been filed 180 days after the date of such deemed liquidation.

Pursuant to 19 U.S.C. § 1504(d), "when a suspension required by statute or court order is removed, [CBP] shall liquidate the entry, unless liquidation is extended under subsection (b), within 6 months after receiving notice of the removal from [Commerce]."  19 U.S.C. § 1504(d).  If any such entry, unless extended, "is not liquidated by the Customs Service within 6 months after receiving such notice" then it "shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record[.]"  *Id.*

"In order for an entry to be deemed liquidated, the suspension of liquidation must have been removed; Customs must have received notice of the removal of the suspension; and Customs must not have liquidated the entry at issue within six months of receiving notice of the suspension removal."  *Aspects Furniture Int'l, Inc. v. United States*, 42 F.4th 1366, 1370 (Fed. Cir. 2022) (citing *Cemex, S.A. v. United States*, 384 F.3d 1314, 1321 (Fed. Cir. 2004) and *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002)).  The deemed liquidation statute also requires "that a notice of removal of suspension of liquidation [] be 'unambiguous and public.'"  *Id.* (quoting *Cemex*, 384 F.3d at 1320).  Commerce's instructions in Message No.

9113302 meet these criteria for notice of the removal of suspension of liquidation for entries of merchandise covered by that message.

CBP received notice of the removal of suspension of liquidation for entries of merchandise described in Message No. 9113302 on April 8, 2019.  *See* Message No. 9113302 ("Notice of the lifting of suspension of liquidation of entries of subject merchandise which are covered by paragraph 2 and entered, or withdrawn from warehouse, for consumption on or after 5/21/2018 occurred with the publication of the notice of revocation in the Federal Register (84 FR 13888, 04/08/2019.")); *CCR Final Results*, 84 Fed. Reg. 13,888.  In Message No. 9113302, Commerce directed CBP "to terminate the suspension of liquidation for all shipments of grade 1078 and higher tire cord quality wire rod entered, or withdrawn from warehouse, for consumption on or after 5/21/2018, for which an end-use certification was filed with CBP at the time of entry summary," and instructed CBP that all such entries "should be liquidated without regard to antidumping duties (i.e., refund all cash deposits)."  Message No. 9113302 at ¶ 3.

If the entries at issue were covered by the scope of the message, as plaintiffs claim, then the operation of the deemed liquidation of those entries was triggered by Commerce's issuance of the *CCR Final Results*.  *See Aspects Furniture*, 42 F.4th at 1370–71.  Commerce lifted the suspension of liquidation for the entries covered by the exclusion in the amended scope of the AD Order, and CBP received notice of the lifting of suspension of liquidation with the publication of the revocation in the Federal Register and subsequent instructions in Message No. 9113302.  Thus, if plaintiffs were correct that the instructions in Message No. 9113302 should have applied to the subject entries (which they are not), then CBP failed to liquidate the entries within six months of receiving notice of the lifting of suspension for entries covered by that message.  By operation of 19 U.S.C. § 1504(d), therefore, the entries would have liquidated in

23

October 2019.  *See Aspects Furniture*, 42 F.4th at 1370–71; *Koyo Corp. of U.S.A. v. United States*, 497 F.3d 1231, 1237 (Fed. Cir. 2007); *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1275 (Fed. Cir. 2002) (holding that "the date of publication provides an unambiguous and public starting point for the six-month liquidation period").

Moreover, the duty rate applicable to the deemed liquidation would have been the rate deposited by the importer at the time of entry, the cash deposit AD duty rate of 41.10 percent *ad valorem*.  The "duty rate asserted by the importer" language in the statute means the rate deposited by the importer at the time of entry.  *Int'l Trading*, 281 F.3d at 1277; *Koyo*, 497 F.3d at 1242–43 ("The deposit rate is the correct rate of duty assessed for a deemed liquidation under the procedures of 19 U.S.C. § 1504(d)[.]").  This interpretation applies regardless of whether the deposited rate is higher than is instructed by Commerce, *i.e.*, even if the deemed liquidation is adverse to the importer.  *See Koyo*, 497 F.3d at 1243.  Thus, "[l]ike an unlawful actual liquidation, [a] deemed liquidation can be protested and the [Commerce] review results can have effect if the importer timely invokes its post-liquidation protest remedy under 19 U.S.C. § 1514."  *Id.*  But "[i]f the importer forgoes filing a timely protest, then the deemed liquidation stands and is final against the importer."  *Id.*  Thus, if the instructions in Message No. 9113302 applied to the subject entries, as Kiswire claims, then after the date of liquidation by operation of law in October 2019, Kiswire could only recover these duties by filing a timely protest within 180 days after the date of the deemed liquidation, *i.e.*, by April 2020.  Because plaintiffs forwent the filing of such a timely protest, instead filing protests in 2021 and 2022, the entries at issue have

become "final and conclusive upon all persons" under 19 U.S.C. § 1514(a) as to CBP's decision not to apply the instructions in Message No. 9113302.[11]

Given its belief that Message No. 9113302 applied to the subject entries, plaintiffs should have been aware that the entries would then have been deemed liquidated in October 2019 and should have filed a timely protest against any such deemed liquidation.  By enacting 19 U.S.C. § 1504(d), Congress meant to address the situation where CBP does not act to liquidate entries when suspension is removed.  *See Koyo*, 497 F.3d at 1239–40 (citing S. Rep. No. 95–778, 95th Cong., 2nd Sess. 31–32 (1978)) (stating that "Congress enacted the deemed liquidation statute to prevent Customs from belatedly assessing additional duties and from indefinitely retaining duties deposited in excess"); *Int'l Trading Co. v. United States*, 412 F.3d 1303, 1309–10 (Fed. Cir. 2005) (stating that Congress enacted section 1504 "in order to restrict the length of time Customs could take to liquidate an entry" and that "one of the primary objectives of the 1993 amendment to section 1504(d) was to remove the government's unilateral ability to extend the time for liquidating entries indefinitely.").  Kiswire failed to avail itself of the protest remedy provided by Congress to recover any duties that Kiswire believes CBP retained contrary to the instructions in Message No. 9113302.  Accordingly, CBP's non-application of the instructions in Message No.

---

[11] By contrast, in the Government's view, because the correct instructions that applied to the subject entries were in Message No. 1118402, the protests were not untimely, but review is limited solely to whether CBP correctly interpreted Commerce's instructions in Message No. 1118402.  If the court concludes that Message No. 9113302 applies, then the deemed liquidations of the entries were final and conclusive by April 2020, before the filing of plaintiffs' protests.  *See* 19 U.S.C. § 1514 (stating that protestable decisions that are not timely protested within 180 days after the date of liquidation "shall be final and conclusive upon all persons"); 19 U.S.C. § 1514(a)(4) (applying to deemed liquidations); *see also* 19 U.S.C. § 1514(c)(3)(A) (reflecting that a protest be filed "within 180 days after but not before the *date* of liquidation[,]" including deemed liquidations, rather than the *notice* of liquidation as the statute provided before it was amended in 2004) (emphasis added); *see* Section 2103 of the Miscellaneous Trade and Technical Corrections Act of 2004, Pub. Law 108-429, 118 Stat. 2434 (2004).

9113302 to the subject entries is "final and conclusive upon all persons (including the United States and any officer thereof)." 19 U.S.C. § 1514(a).

###    C.    Commerce's Instructions to CBP Implementing the *CCR Final Results* Provided Unambiguous and Public Notice

To attempt to overcome the conclusion that Message No. 9113302, as applied to the subject entries, would have triggered deemed liquidation of those entries, plaintiffs argue that suspension of liquidation was not actually lifted by the *CCR Final Results* but rather by the *1st AR Final Results*. *See* Pls. Br. at 19–22, 22–25. As discussed above, however, the *1st AR Final Results* and corresponding instructions in Message No. 1118402 instructed CBP to lift suspension and liquidate the subject entries at the cash deposit rate. Kiswire contends, however, that while the instructions from the *1st AR Final Results* (in Message No. 1118402) should be applied for purposes of the lifting of suspension of liquidation for the subject entries, those instructions should *not* be applied for purposes of the entries' actual liquidation. Conversely, Kiswire argues that the instructions from the *CCR Final Results* (in Message No. 9113302) should *not* be applied for purposes of the lifting of suspension but *should* be applied for purposes of the liquidation. Kiswire cannot have it both ways and cherry-pick from each set of instructions and discard the rest as it likes. Either the instructions from the *CCR Final Results* (in Message No. 9113302) apply to the entries, such that the entries should not have been subject to the first administrative review, *or* the entries *are* properly subject to the review, such that the instructions from the *1st AR Final Results* (in Message No. 1118402) apply. It cannot be both.

Nevertheless, Kiswire argues that the suspension of liquidation could not have been lifted at the time of the *CCR Final Results* because such notice was not "unambiguous and public." *Id.* at 24. Specifically, Kiswire claims that the April 8, 2019 notice did not "explicitly and unambiguously address the liquidation of the entries that were made after May 21, 2018 but

before publication of the *Wire Rod CCR Final Results*," such as the subject entries.  Pls. Br. at 25.  Plaintiffs essentially claim that the notice was ambiguous "as applied" to the subject entries, and thus did not trigger deem liquidation because end-use certifications could not have been filed at the time of entry summary for the subject entries, where the entry summary filing had already occurred before the retroactive certification requirement was known.  *Id.*  Kiswire's argument is unpersuasive.  There is no ambiguity that CBP received public notice of the removal of suspension for entries that were covered by Commerce's instruction in Message No. 9113302, and the fact that the subject entries were not covered by the scope of those instructions (because the end-use certifications were not filed at the time of entry summary) does not mean that Commerce's instructions to terminate the suspension for entries that *were* covered was ambiguous.

### 1.    Kiswire Misunderstands the "Unambiguous" Requirement

Underlying Kiswire's argument is its misunderstanding of the "unambiguous and public" requirement for proper notice under 19 U.S.C. § 1504(d).  Ambiguity in the notice requirement concerns the issue of whether (and when) CBP received proper notice that a suspension of liquidation had actually been lifted, not whether a notice unambiguously "applies" to a specific set of entries.  *See Aspects Furniture*, 42 F.4th at 1371 (stating that "the relevant event that triggers the date of notice is the first publication of an unambiguous and public notice that then becomes the starting point for the six-month liquidation period, whatever form that may take") (citing *Int'l Trading*, 281 F.3d at 1275).  In *International Trading*, the court held that the publication of final results in the Federal Register constituted unambiguous and public notice to CBP that the suspension of liquidation on the subject entries had been removed.  281 F.3d at 1275, 1277.  Similarly, in *Aspects Furniture*, the court held that Commerce issued unambiguous

liquidation instructions ending suspension of liquidation by issuing a message to Customs shortly after the suspension lifted.  42 F.4th at 1371.

By contrast, courts have held that ambiguity exists where the prerequisite for a valid notice under section 1504(d) had not been met, such as when the suspension had not yet been lifted or where the statutory suspension period had not ended.  *See Cemex*, 384 F.3d at 1321 (finding that Commerce instructions issued *before* the deadline for filing a petition for certiorari was "ineffective" in triggering the six-month period because the suspension was not yet lifted); *Fujitsu*, 283 F.3d at 1379–80 (finding that a CIT decision, which was not transmitted to CBP, did not trigger the six-month notice period; holding, instead, that notice to CBP occurred with the publication of the removal of suspension in the Federal Register); *see also Aspects Furniture*. 42 F.4th at 1371 (finding that a CIT decision did not provide unambiguous and public notice where the "decision did not discuss or address the statutory injunction[,]" such that it "did not fulfill the statutory requirement that the notice be unambiguous").

Here, Commerce published the *CCR Final Results* in the Federal Register and stated, as quoted above, that suspension of liquidation was removed for merchandise within the scope of the CCR as of April 8, 2019.  *See* 84 Fed. Reg. 13,890; Message No. 9113302 at ¶ 4.  The notice was unambiguous and public because it explicitly and publicly stated that Commerce would instruct "CBP to liquidate without regard to antidumping duties, all unliquidated entries of merchandise covered by this partial revocation . . . and to refund all AD cash deposits on all such merchandise, with applicable interest."  *Id.* at 13,890.  And on April 23, 2019, Commerce instructed CBP in a public message that expressly directed CBP "to terminate the suspension of liquidation for all shipments of grade 1078 and higher tire cord quality wire rod entered, or withdrawn from warehouse, for consumption on or after 5/21/2018, for which an end-use

certification was filed with CBP at the time of entry summary." Message No. 9113302 at ¶ 3. Thus, unambiguous and public notice of the removal of the suspension for entries of merchandise covered by Commerce's instructions to CBP concerning the partial revocation was provided in April 2019. And if plaintiffs were correct that the subject entries in this case met the conditions imposed by Commerce in its instructions to CBP, then the entries would have liquidated by operation of law six months after CBP received notice in April 2019 of the removal of suspension for the entries that were covered by those instructions.

**2.    The End-Use Certification Requirement for the Subject Entries Was Addressed by the CCR Final Results**

Kiswire then argues that suspension of liquidation was not lifted with respect to its entries because no end-use certification could have been filed at the time of entry. Pls. Br. at 17 (stating that "the end-use certification requirement was not established until the final results of the changed circumstances review[.]"); Pls. Br. at 25 ("Entries during this window were intended to be covered by Commerce's partial revocation; however, no end-use certifications could have been filed *at the time of entry summary* because the end-use certification requirement was not established until the [*CCR Final Results*].") (emphasis in original). But there is no indication in either the *CCR Final Results* or Commerce's subsequent instructions to CBP (in Message No. 9113302) that there was any set of entries that was intended to be covered by Commerce's partial revocation but for which end-use certifications were not filed at the time of entry summary. On the contrary, in both the *CCR Final Results* and its subsequent instructions to CBP, Commerce clearly stated that the revocation applied only to entries of subject merchandise for which end-use certifications were filed at the time of entry summary.

Kiswire was well-aware of the end-use certification requirement even before the CCR request by the domestic interested parties. First, eight of twelve end-use certifications for the

entries at issue were signed on September 6, 2018—before the CCR request, which was filed on September 17, 2018.  *See* Protest and Entry Papers, No. 22-00285, ECF No. 19-1 at 235, 247, 259, 271, 283, 291, 303, and 315.  Moreover, its other end-use certifications were signed at the time of entry, which occurred between September and December 2018.  *See* Pls. Ex. 2, ECF No. 34-2 at 7–8 (stating that the purchasing manager of KI "signed the end-use certification[s] for KI and KPB around the time of entry"); Def. SUMF ¶ 1.  Kiswire was thus cognizant of the certification requirement at the time of entry and therefore could have in fact filed the certifications at the time of entry summary.  And, as explained above, the end-use certification form remained identical throughout the CCR.  Kiswire could simply have filed such signed certifications at the time of entry or at the time of entry summary.  Indeed, the certification itself requires an acknowledgement by the importer that it "is required to provide this certification and supporting records, *upon entry*, to U.S. Customs and Border Protection (CBP)."  *See, e.g.*, Compl. Attach. 4, No. 22-00181, ECF No. 12-1 at 28–29 (emphasis added).

Second, Kiswire admitted in this litigation that it anticipated this filing requirement.  *See* Pls. Ex. 2, ECF No. 34-2 at 6 (stating that "KI and KPB were aware of the certification requirement that would be imposed prior to the filing of the changed circumstances review request and thus executed end use certifications for all of its entries after August 2018").  Accordingly, if Kiswire anticipated the certification requirement enough to sign them at the time of entry, which mandated explicitly that it also be filed at the time of entry, then Kiswire cannot claim that "no end-use certification could have been filed at the time of entry."  *See* Pls. Br. at 17, 25.

Furthermore, Commerce specifically sought to address the concern with entries filed after May 21, 2018 but before the publication of the *CCR Prelim Results*, the very entries Kiswire

30

now claims were not "explicitly" or "unambiguously" addressed by the notice. In soliciting comments, Commerce identified "an apparent discrepancy between the retroactive revocation of entries of grade 1078 and higher tire cord wire rod to May 21, 2018, and the requirement of end-use certifications as a condition of entry." *See Solicitation of Comments Letter* at 1 (Gov't Ex. 2). Commerce reasoned that, because "these entries were made without an end-use certification, it is unclear how we would instruct [CBP] to liquidate the appropriate entries." *Id.*

In seeking to alleviate Commerce's concern about issuing an order setting forth a retroactive entry summary filing requirement, Kiswire, along with other importers, publicly represented to Commerce that there should be no cause for concern and that the issue be resolved quickly:

> First, there were no imports of tire cord quality wire rod from Korea or the United Kingdom that entered the United States between May 21, 2018…and September 21, 2018…that were not accompanied by[12] an end-use certification. In fact, [   ][13] since May 21, 2018. [   ] imported grade 1078 and higher tired cord quality wire rod during this time period, and [   ]. Each of [   ] shipments of grade 1078 and higher tire cord quality wire rod during this time period was accompanied by an end-use certification, confirming that the grade 1078 and higher wire rod would be used exclusively in the production of tire cord. *See* Attachment 1, providing examples of the end-use certifications that accompanied [   ] entries of grade 1078 and higher tire cord quality wire rod during this time period.

*See* Gov't Ex. 3 at 2–3.

---

[12] We note that the importers' comments state that the entries were "accompanied by" end-use certifications, in contrast to the *CCR Final Results* and instructions, which set forth a requirement that the certifications "be filed" at the time of entry summary filing.

[13] The empty square brackets ("[ ]"), which contain business propriety treatment sought by the parties pursuant to 19 C.F.R. § 351.304(b), are included in the original public version of the cited letter.

The petitioners also submitted a letter, citing the importers' comments, but also indicating that the filing of the CCR request on September 17, 2018 "which contained a sample end-user certification, . . . placed potential importers on notice that an end-use certification would be necessary to import tire cord wire rod and be excluded from antidumping duties." *See* Gov't Ex. 4 at 3.

Kiswire now backtracks, arguing that Commerce's "notice did not explicitly and unambiguously address the liquidation of entries that were made after May 21, 2018 but before publication of the *Wire Rod CCR Final Results*." Pls. Br. at 25. The Commerce proceedings demonstrate that these entries were specifically addressed. Any failure by Commerce to "explicitly" mention the retroactive entry summary filing requirement in the *CCR Final Results* resulted from the very assurances provided, in part, by Kiswire. Because these entries were claimed to be no cause for concern, Commerce concluded that the CCR would be administrable. *See* 84 Fed. Reg. 13,889.

To the extent that Kiswire had any concerns with the Commerce proceedings, including the use of a retroactive end-use certification filing requirement, plaintiffs had recourse to challenge the *CCR Final Results* in an action under 28 U.S.C. § 1581(c), *see* 19 U.S.C. § 1516a(a)(2),[14] or the instructions in an action under 28 U.S.C. § 1581(i)(4). *Shinyei Corp. of Am.*

---

[14] Section 1516a(a)(2) provides that "an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade" within "thirty days after . . . the date of publication in the Federal Register of . . . notice of . . . a final determination. . . by [Commerce] under section 1675 of this title[.]" 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (B)(iii). Section 1675, in turn, covers reviews based on changed circumstances. *See* 19 U.S.C. § 1675(b); *See also Marine Harvest (Chile) S.A. v. United States*, 244 F. Supp. 2d 1364, 1369 (2002) (exercising jurisdiction pursuant to 28 U.S.C. § 1581(c) to review and action challenging the final results of a changed circumstances review issued under Section 1675); *Itochu Bldg. Prod. v. United States*, 2014 WL 1363999 (Ct. Int'l Trade 2014) (same).

*v. United States*, 355 F.3d 1297, 1312 (Fed. Cir. 2004) (concerning a challenge to Commerce's liquidation instructions as inconsistent with the amended review results that allegedly covered the entries); *Consolidated Bearings Co. v. United States*, 348 F.3d 997, 1002-03 (Fed. Cir. 2003). Because Kiswire chose not to do so, the *CCR Final Results* and Commerce's subsequent instructions to CBP, which required end-use certification to have been filed at the time of entry summary (and therefore did not cover the subject entries) became final and conclusive. *See* 19 U.S.C. § 1514(b) ("With respect to determinations [that] are reviewable under section 1516a[, such determinations] are final and conclusive upon all persons . . . unless a civil action contesting a determination listed in section 1516a of this title is commenced in the [CIT].").

### 3.   CBP's Treatment of The Entries Is Irrelevant to The Notice of Lifting of Suspension

CBP's treatment of the entries is not dispositive of whether, as a matter of law, the subject entries are properly within the scope of Commerce's instructions from the *CCR Final Results* (in Message No. 9113302), such that the entries are *not* properly within the scope of Commerce's subsequent instructions from the *1st AR Final Results* (in Message No. 1118402), or whether the converse is true.  As a matter of law, either the subject entries were covered by Commerce's instructions from the *CCR Final Results* (in Message No. 9113302), as plaintiffs contend, in which case liquidation by operation of law would have occurred in October 2019, or they were not, as the Government contends, in which case the subject entries were covered by Commerce's subsequent instructions from the *1st AR Final Results* (in Message No. 1118402) and liquidation occurred in September 2021.

Plaintiffs incorrectly argue that the conduct of CBP personnel, the ACE entry summary record, and the Official Bulletin Notice of Liquidation are material to the question of whether the notice of the removal of suspension was unambiguous.  *See* Pls. Br. at 25–30.  First, whether the

*CCR Final Results* constituted an unambiguous and public notice of removal of suspension of liquidation does not turn on CBP's conduct, nor on CBP's systems of record. *See Aspects Furniture*, 42 F.4th at 1370; *Int'l Trading Co.*, 412 F.3d at 1313; *Fujitsu*, 283 F.3d at 1376. Commerce, not Customs, is the authority that controls lifting of the suspension of liquidation. *See Fraserview Remanufacturing Inc. v. United States*, 2024 WL 322292 at *9, Ct. No. 22-00244 (January 25, 2024) ("liquidation by operation of law cannot occur while the suspension of liquidation is still in place . . . unless *Commerce* has notified Customs that the suspension of liquidation has been lifted[.]") (emphasis added); *Aspects Furniture International Inc. et al. v. United States*, 510 F. Supp. 3d 1353, 1374–75 (Ct. Int'l Trade) (concluding that while CBP's records should have stated that the entry was "reliquidated" rather than "liquidated," those records did not change the fact that CBP's computation of duties for that entry on December 1, 2017, one day after the entry deemed liquidated, was covered by a voluntary reliquidation).

Further, CBP's actions and communications were consistent with the fact that the entries were not covered by the liquidation instructions in Message No. 9113302. Thus, any indication by CBP that the entries remained suspended merely reflected its views that Message No. 9113302 did not apply, and not that Commerce's *CCR Final Results* constituted an ambiguous notice in a way that caused the entries to remain suspended. Regardless, if Message No. 9113302 applies, CBP could not change the statutory operation of deem liquidation under 19 U.S.C. § 1504(d).[15]

---

[15] That CBP granted plaintiffs' PSCs for eleven other entries, with refunds of antidumping duties, similarly has no legal effect on the operation of 19 U.S.C. § 1504(d) nor on the outcome of this action, which only concerns the subject entries..

The flaw in Kiswire's argument is apparent when taken to its logical end. Kiswire contends that the subject entries remained suspended after the *CCR Final Results*, and that suspension of liquidation was lifted with Commerce's *1st AR Final Results* on March 23, 2021. It is unclear how the suspension of Kiswire's entries could extend from the time of the changed circumstance review to the first administrative review. The administrative review necessarily covers merchandise subject to the AD Order; and only those entries containing covered merchandise would be suspended pending the outcome of the administrative review. If Kiswire's entries were excluded from the AD Order due to the changed circumstances review, which as explained above, they were not, then these same entries cannot be subject to the administrative review—nor could they have remained suspended. Moreover, it is incongruent to conclude that the lifting of suspension in the *1st AR Final Results* could result in the application of instructions not associated with that suspension, but instead instructions issued two years earlier as part of a separate review. Rather, with the *1ˢᵗ AR Final Results*, Commerce lifted the suspension of liquidation for merchandise covered by the scope of the administrative review. That scope cannot cover merchandise previously excluded from the scope of the AD Order. This disconnect further indicates that the deemed liquidation statute would have been triggered from the date the *CCR Final Results* lifted the suspension if the *CCR Final Results* and Message No. 9113302 applied to its entries.

As discussed, however, Kiswire's entries were liquidated pursuant to Message No. 1118402 following the notice of the lifting of suspension in the *1st AR Final Results*, as even Kiswire argues, and therefore AD duties were properly assessed at the cash deposit rate of 41.10 percent as directed by Commerce's instructions in that message. Therefore, CBP's actions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## CONCLUSION

For these reasons, the Court should grant the Government's cross-motion for summary judgment, deny Kiswire's motion for summary judgment, enter judgment in the Government's favor, and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

Of Counsel:

/s/ Mathias Rabinovitch
Alexandra Khrebtukova                MATHIAS RABINOVITCH
Office of the Assistant Chief Counsel    Trial Attorney
International Trade Litigation        Department of Justice, Civil Division
U.S. Customs and Border Protection    Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
(212) 264-0484
*Attorneys for defendant*

Dated: March 25, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

_____
                                        :
KISWIRE INC.,                           :
                    Plaintiff,          :
                                        :
          and                           :
                                        :          Consol. Court No. 22-00181
KISWIRE PINE BLUFF INC.,                :
                                        :
          Consolidated Plaintiff,       :
                                        :
          v.                            :
                                        :
UNITED STATES,                          :
                                        :
          Defendant.                    :
_____:

## CERTIFICATE OF COMPLIANCE

I, MATHIAS RABINOVITCH, a trial attorney in the Office of the Assistant Attorney

General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is

responsible for the foregoing brief in support of defendant's cross-motion for summary judgment

and response in opposition to plaintiffs' motion for summary judgment, relying upon the word

count feature of the word processing program used to prepare the brief, certify that this brief

complies with type-volume limitation under USCIT Standard Chamber Procedure 2(B) and

contains 12,543 words.


                                        /s/ Mathias Rabinovitch
                                        MATHIAS RABINOVITCH