**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| KISWIRE INC. and KISWIRE PINE BLUFF INC.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　　　Defendant. | **NON-CONFIDENTIAL**<br>Proprietary Information<br>Removed from Brief Pages 16 and 19,<br>and from Exhibits 11 and 12.<br><br><br>Consol. Court No. 22-00181 |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

　　　　　　　　　　　　　　　　**MORRIS MANNING & MARTIN LLP**
　　　　　　　　　　　　　　　　1333 New Hampshire Avenue NW, Suite 800
　　　　　　　　　　　　　　　　Washington, D.C. 20036
　　　　　　　　　　　　　　　　(202) 216-4819

　　　　　　　　　　　　　　　　/s/ R. Will Planert
　　　　　　　　　　　　　　　　Donald B. Cameron
　　　　　　　　　　　　　　　　Julie C. Mendoza
　　　　　　　　　　　　　　　　R. Will Planert
　　　　　　　　　　　　　　　　Brady W. Mills
　　　　　　　　　　　　　　　　Mary S. Hodgins
　　　　　　　　　　　　　　　　Eugene Degnan
　　　　　　　　　　　　　　　　Jordan L. Fleischer
　　　　　　　　　　　　　　　　Nicholas C. Duffey
　　　　　　　　　　　　　　　　Stephen A. Morrison
　　　　　　　　　　　　　　　　Ryan R. Migeed

　　　　　　　　　　　　　　　　**SANDLER TRAVIS & ROSENBERG, P.A.**
　　　　　　　　　　　　　　　　675 Third Avenue, Suite 1805
　　　　　　　　　　　　　　　　New York, NY 10178
　　　　　　　　　　　　　　　　(212) 549-0150

　　　　　　　　　　　　　　　　/s/ Patrick D. Gill
　　　　　　　　　　　　　　　　Michael S. O'Rourke
　　　　　　　　　　　　　　　　Patrick D. Gill

Dated:  May 1, 2024　　　　　　　　*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. 2

PLAINTIFFS' RESPONSE AND REPLY BRIEF ............................................... 5

    INTRODUCTION ........................................................................................... 6

    SUMMARY OF ARGUMENT ....................................................................... 8

    ARGUMENT ................................................................................................. 10

        I.      *The Protested Entries Are Excluded from The Antidumping Duty Order and Should Be Liquidated Without The Assessment of Antidumping Duty* .................................................................................................. 10

            a.   *Commerce Revoked The Antidumping Duty Order As To The Subject Entries.* ................................................................................... 10

            b.   *Kiswire Properly Filed Its End-Use Certifications in Compliance With The Revocation Requirement.* ................................................... 20

        II.     *The Suspension of Liquidation Was Not Removed And Customs Did Not Receive Unambiguous and Public Notice of Removal of The Suspension of Liquidation.* ........................................................................................ 27

            a.   *Customs' Decision to Assess Antidumping Duties on The Subject Entries Did Not Become Protestable Until Liquidation.* ...................................... 27

            b.   *Message No. 9113302 Did Not Provide Unambiguous and Public Notice Lifting the Suspension of Liquidation.* ........................................... 38

        III.    *The Government's Evidentiary Objections Should Be Overruled.* ........... 43

    CONCLUSION ............................................................................................. 47

    CERTIFICATE OF COMPLIANCE ............................................................ 49

PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................................................................... 50

LIST OF EXHIBITS ATTACHED TO PLAINTIFFS' RESPONSE AND REPLY ................. 54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspects Furniture Int'l Inc. v. United States*,
  42 F.4th 1366 (Fed. Cir. 2022) ............................................................... 29, 38, 41-42

*Aviall of Texas, Inc. v. United States*,
  18 C.I.T. 727, 861 F. Supp. 100 (1994) .................................................................25

*Cemex S.A. v. United States*,
  384 F.3d 1314 (Fed. Cir. 2004) ......................................................................... 32-38

*Chemsol LLC v. United States*,
  37 C.I.T. 365, 901 F. Supp. 2d 1362 (2013) *aff'd* 755 F.3d 1345 (Fed. Cir.
  2014) ........................................................................................................................ 32-33

*Chemsol LLC v. United States*,
  755 F.3d 1345 (Fed. Cir. 2014) ......................................................................... 32-33

*Daewoo Electronics Co., Ltd. v. United States*,
  6 F.3d 1511 (Fed. Cir. 1993) ....................................................................................22

*Ford Motor Co. v. United States*,
  715 F.3d 906 (Fed. Cir. 2013) ..................................................................................25

*Fraserview Remanufacturing Inc. v. United States*,
  678 F. Supp. 3d 1371 (Ct. Int'l Trade 2024) .................................................. 41-43

*Fujitsu General America, Inc. v. United States*,
  283 F.3d 1364 (Fed. Cir. 2002) .................................................................29, 38, 39

*Gulfstream Aerospace Corp. v. United States*,
  981 F. Supp 654 (Ct. Int'l Trade 1997) ...............................................................25

*Hilsea Investment Ltd. v. Brown*,
  18 C.I.T. 1068 (1994) ...............................................................................................33

*Int'l Trading Co. v. United States*,
  281 F.3d 1268 (Fed. Cir. 2002) ...............................................................................29

*LDA Incorporado v. United States*,
  79 F. Supp. 3d 1331 (Ct. Int'l Trade 2015) .......................................................35

*Mitsubishi Electronics America, Inc. v. United States*,
  44 F.3d 973 (Fed. Cir. 1994) .............................................................................22, 35

*Oy v. United States*,
   61 F.3d 866 (Fed. Cir. 1995)...................................................................................28

*Sunpreme Inc. v. United States*,
   946 F.3d 1300 (Fed. Cir. 2020).................................................................22, 35, 36

*Thyssenkrupp Steel North Am. v. United States*,
   886 F.3d 1215 (Fed. Cir. 2018)........................................................................36, 37

*Borusan Mannesmann Boru Sanayi ve Ticaret v. United States*,
   578 F. Supp. 3d 1333 (Ct. Int'l Trade 2022) ..........................................................33

*United States v. B. Holman, Inc.*,
   29 C.C.P.A. 3 (1941) ...............................................................................................29

*United States v. Utex Int'l, Inc.*,
   857 F.2d 1408 (Fed. Cir. 1988)..........................................................................29, 31

*Xerox Corp. v. United States*,
   289 F.3d 792 (Fed. Cir. 2002)..........................................................................34-35

**Statutes**

5 U.S.C. § 704..................................................................................................................33

19 U.S.C. § 1411..............................................................................................................26

19 U.S.C. § 1412..............................................................................................................26

19 U.S.C. § 1504.....................................................................................................28-29, 38

19 U.S.C. § 1514....................................................................................................29, 33, 36

19 U.S.C. § 1673..............................................................................................................28

28 U.S.C. § 1581....................................................................................................32-33, 36

**Other Authorities**

19 C.F.R. § 10.48.............................................................................................................26

19 C.F.R. § 10.112......................................................................................................25-26

19 C.F.R. §§ 141.0...........................................................................................................22

19 C.F.R. § 141.0a.......................................................................................................21-22

19 C.F.R. § 159.52...........................................................................................................38

*Carbon and Alloy Steel Wire Rod From Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom: Antidumping Duty Orders and Amended Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey*, 83 Fed. Reg. 23,417 (Dep't Commerce May 21, 2018) .................. *passim*

*Carbon and Alloy Steel Wire Rod From the Republic of Korea and the United Kingdom: Notice of Final Results of Antidumping Duty Changed Circumstances Review*, 84 Fed. Reg. 13,888 (Dep't Commerce Apr. 8, 2019) .............. *passim*

*Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2017-2019*, 86 Fed. Reg. 15,461 (Dep't Commerce Mar. 23, 2021)............................................................................................11

Customs Ruling Letter HQ H238490 (Sept. 2, 2014)............................................................. 25-26

Fed. R. Evid. 801 ................................................................................................................... 44-45

Fed. R. Evid. 802 ........................................................................................................................44

Fed. R. Evid. 803 ........................................................................................................................45

Fed. R. Evid. 401 ........................................................................................................................46

Fed. R. Evid. 402 ........................................................................................................................46

*Post Summary Corrections to Entry Summaries Filed in ACE Pursuant to ESAR IV Test*, 76 Fed. Reg. 37,136, 37,137 (U.S. Customs and Border Protection, June 24, 2011) ................................................................................................................24

*Post Summary Corrections to Entry Summaries Filed in ACE Pursuant to ESAR IV Test: Modifications and Clarifications*, 78 Fed. Reg. 69,434, 69,435 (U.S. Customs and Border Protection, Nov. 19, 2013) .............................................................. 23-24

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| KISWIRE INC. and KISWIRE PINE BLUFF INC., | **NON-CONFIDENTIAL** |
| Plaintiffs | Proprietary Information Removed from Brief Pages 16 and 19, and from Exhibits 11 and 12. |
| v. | |
| UNITED STATES, | Consol. Court No. 22-00181 |
| Defendant. | |

**PLAINTIFFS' RESPONSE AND REPLY BRIEF**

Pursuant to Rules 7 and 56 of the Rules of the United States Court of International Trade ("CIT"), Plaintiffs Kiswire Inc. ("KI") and Kiswire Pine Bluff Inc. ("KPB") (collectively, "Kiswire" or "Plaintiffs"), hereby file Kiswire's response to the cross-motion for summary judgment filed by the Defendant, U.S. Customs and Border Protection ("Customs" or "Defendant"), and reply in support of Kiswire's motion for summary judgment.  *See* Defendant's Cross-Motion for Summary Judgment and Response in opposition to Plaintiffs' Motion for Summary Judgment, *Kiswire Inc. v. United States*, Consol. Ct. No. 22-00181 (Ct. Int'l Trade March 25, 2024), ECF No. 38 ("Def. Br.");  Brief in Support of Plaintiff's Motion for Summary Judgment, *Kiswire Inc. v. United States,* Consol. Ct. No. 22-00181 (Ct. Int'l Trade Jan. 5, 2024), ECF No. 34 ("Pl. Br.").  For the following reasons, and those set forth in the annexed response to Customs' statement of undisputed material fact, Kiswire's motion for summary judgment should be granted and Customs' cross-motions should be denied.

## INTRODUCTION

The entries at issue in this action are entries of grade 1078 or higher tire cord quality wire rod ("tire cord quality wire rod") that entered between September 2018 and December 2018 ("subject entries"). Each of the subject entries fell within the "window period" between May 21, 2018, the date of publication of the antidumping duty order on steel wire rod from Korea, and April 8, 2019, the date of publication of the *Changed Circumstances Review* that revoked that order with respect to tire cord quality wire rod. *Carbon and Alloy Steel Wire Rod From the Republic of Korea and the United Kingdom: Notice of Final Results of Antidumping Duty Changed Circumstances Review*, 84 Fed. Reg. 13,888 (Dep't Commerce Apr. 8, 2019) ("*Changed Circumstances Review*"); *Carbon and Alloy Steel Wire Rod From Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom: Antidumping Duty Orders and Amended Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey*, 83 Fed. Reg. 23,417 (Dep't Commerce May 21, 2018) (the "*Order*"). In that proceeding, the U.S. Department of Commerce ("Commerce"), with the support of the domestic industry petitioners, revoked the order with respect to tire cord quality wire rod, provided an appropriate end use certification was submitted to Customs. Commerce made the revocation retroactive to May 21, 2018, *i.e.*, the date of the *Order*.

During the *Changed Circumstances Review*, Customs commented on the administrability of filing end-use certifications for entries of the revoked product. In February 2019, Customs recommended to Commerce that end use certifications be retained by importers but not filed as part of the entry process. Commerce, however, ultimately determined to require submission of the end-use certifications "at the time of entry summary." Prior to Commerce's issuance of the final determination in the *Changed Circumstances Review*, there was no requirement to file end-use certifications at the time of entry imports of steel wire rod. Pl. Br. at 25.

Although Commerce was clear that the revocation was retroactive to May 21, 2018, the *Changed Circumstances Review* did not expressly address the process for submitting end use certifications to Customs for the window period entries.  Consequently, immediately following the publication of the *Changed Circumstances Review* on April 8, 2019, Kiswire, through its broker, contacted Customs multiple times—beginning on April 23, 2019—for guidance on how to provide end-use certifications for the already admitted window period entries but received no response.  Pl. Br. at 26.  In the absence of any guidance from Customs, Kiswire filed post summary corrections ("PSCs") amending the entries by submitting end-use certifications.  *Id.* Beginning in January 2020, Customs approved PSCs covering eleven of the window period entries and liquidated them without antidumping duties.  As to the subject entries Customs issued notices showing the entries remained suspended due to the AD order.  Pl. Br. at 26-27.  On April 6, 2020, Customs changed the status of subject entries to "ADD suspend" on its Official Notice of Extension, Suspension and Liquidation website.  Pl. Br. at 27.  Thereafter, Customs personnel informed Kiswire, on at least four subsequent occasions, that the subject entries remained suspended.  As of January 2022, Customs' official ACE system continued to show subject entries as suspended due to the antidumping review.  Pl. Br. at 22.  Upon the conclusion of Commerce's administrative review covering the period from October 31, 2017 to April 30, 2019, Customs manually liquidated some subject entries "as entered" and assessed antidumping duties at the 41.10 percent rate deposited on entries.  The remaining subject entries deemed liquidated six months after the conclusion of the administrative review at the 41.10 percent "all-others" rate.  Pl. Br. at 28.

Customs now takes the position that the entries subject to this action, all of which entered during the window period, remained within the scope of the *Order* and thus were correctly

assessed antidumping duties upon liquidation.  Customs contends that because the end-use certifications were not submitted *at the time of entry summary* but rather were submitted after entry by means of PSCs, they are not covered by Commerce's retroactive revocation of the order as to tire cord quality wire rod.  Alternatively, Customs argues that if the entries were subject to the revocation for tire cord quality wire rod, Kiswire still should be denied relief because the entries would have been deemed liquidated in October 2019, six months after Commerce issued instructions to Customs to liquidate entries that were covered by the *Changed Circumstances Review*.  Customs advances this alternative argument in the face of Customs' repeated statements in official notices and messages to Kiswire's broker that the entries were not deemed liquidated and remained suspended.  Customs' assessment of antidumping duties is unlawful and unsupported by the evidence on the record before the Court.

## SUMMARY OF ARGUMENT

Commerce's *Changed Circumstances Review* provides that entries of tire cord quality wire rod are excluded from the *Order* effective May 21, 2018.  Customs' interpretation of the *Order* reads out of Commerce's determination the express retroactive application to the subject entries.  Customs' argument that the entries were not excluded from the *Order* because no end-use certifications had been filed at the time of entry summary filing ignores the fact that the certifications could not have been filed at the time of the entry summary because the *Changed Circumstances Review* had not been completed.  Customs' argument that Kiswire was aware during the changed circumstances review that the certifications would likely be needed and thus could have filed them with the entry summaries is unavailing.  At the time the entries were made there had been no revocation for tire cord quality wire rod, and Commerce had yet to determine whether certifications would be required to be submitted to Customs.  Customs itself had recommended in the *Changed Circumstances Review* that end-use certifications be retained by

importers and not filed as part of the entry process.  Additionally, Customs' position is

inconsistent with its own public guidance and practice regarding the use and effect of PSCs

which operate to revise and replace the original entry summaries.  Further, Customs' arguments

are belied by its decision to liquidate without antidumping duties other identically situated

entries made by Kiswire during the window period based on end-use certifications submitted by

means of PSCs.

Customs' alternative argument that the entries were deemed liquidated in October 2019 is

also without merit.  The Customs decision challenged herein is the decision that the entries were

subject to antidumping duties notwithstanding the *Changed Circumstances Review*.  That

decision was not final and protestable until September 2021, after the conclusion of the

administrative review when Customs manually liquidated some of the entries and allowed the

other entries to liquidate by operation of law six months after receiving liquidation instructions

covering the review period.  There is no earlier point at which there was a public and

unambiguous notice of the lifting of the statutory suspension of liquidation as to these entries.

The April 2019 Commerce instructions did not expressly address the issue of the window period

entries and Customs repeatedly advised – both in official notices and through express statements

to Kiswire's broker – that those entries therefore still remained suspended pending the receipt of

liquidation instructions from Commerce for those entries.  Def. Resp. to Pl. Statement of Facts

paras. 20-27.  To now accept Customs' alternative argument that the entries nevertheless deemed

liquidated in October of 2019 would reward Customs for repeatedly misinforming Kiswire of the

suspension status of these entries.  This would fly in the face of the deemed liquidation statute's

"primary purpose," which is to increase certainty in the customs process for importers.  This is

not a case where Kiswire slept on its rights – the record shows that Kiswire, through its Customs

broker, diligently prosecuted its claim for the refund of the previously deposited antidumping

duties on these entries but was repeatedly advised by Customs that the entries remained

suspended.  Accordingly, Customs' alternative deemed liquidation argument should be rejected.

**ARGUMENT**

I.   *The Protested Entries Are Excluded from The Antidumping Duty Order and Should Be Liquidated Without The Assessment of Antidumping Duty.*

It is undisputed that the entries consist of tire cord quality wire rod, and Customs admits

that Kiswire submitted to Customs end-use certifications in the form prescribed by Commerce

for each of these entries.  Nevertheless, Customs contends the entries at issue were subject to the

*Order* because the end-use certifications were not filed at the time of entry, but rather were filed

subsequent to entry via PSCs.  Although these window period entries, by definition, entered

before the final *Changed Circumstances Review* was issued – and thus before the end-use

certification requirement had been adopted by Commerce – Customs contends that the failure to

have filed the certifications *at the time of entry summary* negates the effective date of revocation

specified by Commerce and renders all such window period entries subject to the *Order*.  Def.

Br. at 15 ("There is no question that the entries at issue in this case were covered by the *Order* on

carbon and alloy steel wire rod from Korea and were suspended upon entry.").  Customs'

position conflicts with the plain meaning of the amended scope of the *Order* and is contradicted

by the record of the *Changed Circumstances Review* as well as Customs' own position up until

March 2019.

a.   *Commerce Revoked The Antidumping Duty Order As To The Subject Entries.*

The *Order*, as amended by the *Changed Circumstances Review*, provides in relevant part:

> *Excluded from the scope of the antidumping duty orders from Korea and the United Kingdom are grade 1078 and higher tire cord quality wire rod to be used in the production of tire cord wire.* Grade 1078 and higher tire cord quality wire rod refers to wire rod with not less than 0.78 percent of carbon and includes but is not limited

to other high carbon grades of wire rod such as Grade 1078, 1080, 1085, 1086, 1090, and 1092…

The designation of the products as "tire cord quality" indicates the acceptability of the product for use in the production of tire cord applications which require that the tire cord wire rod be drawn into wire with a diameter of 0.405 mm or less. *These quality designations are presumed to indicate that these products are being used in tire cord applications, and such merchandise intended for the tire cord applications is not included in the scope.* Importers of tire cord quality wire rod are required to file with {Customs}, at the time of the Entry Summary filing with {Customs}, a certification of end use that certifies that the Grade 1078 and above tire cord quality wire rod will be used only in the production of tire cord wire. In instances where the importer of record is not the end-user, the importer must provide written notice of the end-use requirement and an official of the end user must also sign a copy of the certification filed with {Customs} at the time of Entry Summary. Importers of record of tire cord wire rod are required to maintain a copy of the end-use certifications that were filed with the entry summaries with the {Customs} and to provide them at the request of {Customs} or Commerce.

*Changed Circumstances Review*, 84 Fed. Reg. at 13,889 (emphasis added); *Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2017-2019*, 86 Fed. Reg. 15,461 (Dep't Commerce Mar. 23, 2021) and accompanying issues and decision memorandum at 3-4 (ACCESS Barcode 4100189-01).  Commerce explained, "because we determine that there are changed circumstances that warrant the revocation of the *Orders*, in part, we will instruct {Customs} to liquidate without regard to antidumping duties, all unliquidated entries of merchandise covered by this partial revocation that were entered, or withdrawn from warehouse, *on or after May 21, 2018*."  *Id.* at 13,890 (emphasis added).  Not only was Customs put on notice of the amended scope of the *Order* and effective date by the *Changed Circumstances Review*, Commerce notified Customs of the terms of the revocation in Message No. 9113302, which provided:

{Customs} is directed to terminate the suspension of liquidation for all shipments of grade 1078 and higher tire cord quality wire rod entered, or withdrawn from warehouse, for consumption on or after 5/21/2018, for which an end-use certification was filed with {Customs} at the time of entry summary.  All entries of the revoked product that were suspended *on or after 5/21/2018* should be liquidated without regard to antidumping duties (i.e., refund all cash deposits).

Message No. 9113302 (Apr. 23, 2019), Case No. 22-181 Compl. at Attachment 2 (emphasis added).

As amended by the *Changed Circumstances Review*, the express terms of the *Order* unambiguously provide (i) that grade 1078 and higher tire cord quality wire rod are excluded from the scope of the *Order* and (ii) that this revocation was made retroactive to May 21, 2018, the date of the *Order*. Customs does not dispute that the scope of the *Order* excludes grade 1078 and higher tire cord quality wire rod or that the merchandise at issue is grade 1078 and higher tire cord quality wire rod. Nor does it dispute that Kiswire provided Customs with the end-use certifications required by the *Changed Circumstances Review*. Rather, the sole basis of the Customs' assertion that the entries are subject to the *Order* is the fact that Kiswire transmitted the end-use certifications to Customs by means of PSC submitted after publication of the *Changed Circumstances Review*, rather than doing so at the time of filing of the entry summary. Customs argues that the *Changed Circumstances Review* and Message No. 9113302 directed Customs to liquidate without antidumping duty only "those suspended entries 'for which an end-use certification was filed with {Customs} at the time of entry summary.'" Def. Br. at 18; *see also* Def.'s Br. at 29 ("Commerce clearly stated that the revocation applied only to entries of subject merchandise for which end-use certifications were filed at the time of the entry summary.").

Customs thus advances a "Catch-22" reading of the scope of the *Order* with respect to entries made during the window period between publication of the *Order* and the revocation in the *Changed Circumstances Review*. For such entries, importers would not have filed end-use certifications at the time of filing of the entry summary because the certification requirement had

not yet been adopted.[1]  And if importers attempted to comply with the end-use certification requirement once adopted using the PSC procedure that exists for the express purpose of amending entries after merchandise has already been admitted, Customs contends that the certifications do not count because they were not filed at the time of the original entry summary.

The Court should decline to accept this tendentious reading of the *Order* as modified in Commerce's *Changed Circumstances Review*.  First, Customs' reading of the scope of the *Order* is at odds with its own decision to liquidate without antidumping duties other identically situated window period entries of the same merchandise, for which Kiswire filed the end-use certifications after entry by means of PSCs.  Pl. Br. at 22, 31-32; Def. Resp. to Pl. Statement of Facts paras. 12-19.  Second, the government's position effectively reads out of the *Changed Circumstances Review* Commerce's express determination that the revocation was retroactive to the date of the *Order* by ensuring that no importer could ever avail itself of the exclusion for entries made during the window between that date and the date of publication of *Changed Circumstance Review*.  Third, the government's position is at odds with its own stated position and practice regarding the use of PSCs to correct or perfect entry summaries for merchandise that has already been admitted.

Customs argues that "Commerce's instructions in Message No. 1118402 do not provide for any exclusion" of the entries at issue.  Def. Br. at 17 (citing Message No. 1118402 (Apr. 28, 2021), Case No. 22-181 Compl. at Attachment 15).  But this argument disregards that the *Order* had been revoked regarding tire cord quality wire rod.  Commerce's determination is "applicable May 21, 2018," and thus the entries in question were not within the scope of the order and should

---

[1] As discussed further below, during the *Changed Circumstances Review* before Commerce, Customs actively opposed requiring importers to file end-use certifications at the time of entry.  **Plaintiffs' Exhibit 10**.

have therefore been liquidated with antidumping duties. *Changed Circumstances Review*, 84
Fed. Reg. at 13,888. Customs' blinkered reading of Message 1118402 fails to give effect to
Commerce's revocation of the *Order*.

Customs argues that Kiswire was "cognizant of the certification requirement at the time
of entry and thus could have filed the certifications at the time of the entry summary." *Id.* at 30.
Customs also argues that the *Changed Circumstances Review* "addressed" the window period
entries, and therefore Kiswire should not now be heard to argue that such entries should have
been liquidated without antidumping duties. *Id.* at 30-32. These arguments are without merit.
To the extent that the Commerce proceeding addressed the window period entries, the record of
that proceeding confirms that Commerce and all interested parties intended that the revocation of
the *Order* would apply retroactively to the window period entries made by Kiswire.

That Kiswire was aware before the revocation was finalized that Commerce would likely
require end-use certifications is entirely irrelevant. The issue is not whether Kiswire was aware
that end-use certifications would be needed, but rather whether Commerce or Customs had
imposed the certification requirement to submit such certifications to Customs at the time these
entries were made. Because the revocation of the *Order* had not yet been finalized when those
entries were made, the answer is clearly "no." Furthermore, had Kiswire attempted to file the
end-use certifications at that time, it is doubtful whether Customs would have accepted them.
The *Changed Circumstance Review* was not final and, as discussed below, Customs had opposed
requiring importers to submit the certifications at entry. Adding insult to injury, Kiswire
contacted Customs immediately after Message No. 9113302 was issued and inquired how to give
effect to revocation of the order with respect to the window period entries, and Customs did not
respond.

Moreover, the record of the *Changed Circumstances Review* makes clear that all parties intended the revocation to apply to window period entries. The petitioners in the antidumping duty proceeding requested that Commerce revoke the *Order* "as to grade 1078 and higher tire cord quality wire rod effective May 21, 2018." Gov't Ex. 1 at 8. Petitioners specifically stated that they had no interest in having antidumping duties imposed on entries during the window period. To the contrary, the express reason for the *Changed Circumstances Review* revocation was to ensure that such entries would not be subject to antidumping duties and could be used in the production of tire cord: "an exclusion for grade 1078 and higher tire cord wire rod from Korea and the United Kingdom will allow tire cord manufacturers, such as Bekaert, *Kiswire*, and Tokusen to obtain the raw material inputs necessary to maintain their production." *Id.* at 7 (emphasis added).

Customs concedes that Commerce recognized its determination would apply retroactively to entries that had already been made without end-use certifications. Gov't Ex. 2. In the course of the *Changed Circumstances Review*, Commerce identified "the apparent discrepancy between the retroactive revocation of entries of grade 1078 and higher tire cord wire rod to May 21, 2018 and the {proposed} requirement of end-use certifications as a condition of entry," and solicited input on how to ensure that those entries would be handled. *Id.*("As *these entries were made without an end-use certification*, it is unclear how we would instruct {Customs} to liquidate the appropriate entries.") (emphasis added). For this reason, Commerce solicited comments "on the appropriateness of end-use certifications as a condition of entry" and sought input from Customs "on the administrability of such certifications from importers of tire cord quality wire rod." *Id.*

In response to that request, Customs recommended in February 2019, months after the entries subject to this litigation entered, that end-use certifications *not be required to be*

*submitted with the entries* and that Commerce instead merely require that companies maintain

the certifications in case they were later requested by Commerce or Customs.  Kiswire and

Petitioners argued that the administrability of the end-use certifications on retroactive entries

should not pose a problem for Customs or Commerce.  Kiswire explained that appropriate end-

use certifications had been obtained and would be provided for the entries that had been made

since the publication of the order:

> First, there were no imports of tire cord quality wire rod from Korea or the United
> Kingdom that entered the United States between May 21, 2018 (the requested date
> of revocation) and September 17, 2018 (the date of filing of the changed
> circumstances review) that were not accompanied by an end-use certification…
> [                    ] imported grade 1078 and higher tired cord quality wire rod during
> this time period, and [
>                         ].  *Each of* [            ] *shipments of grade 1078 and higher tire
> cord quality wire rod during this time period was accompanied by an end-use
> certification, confirming that the grade 1078 and higher wire rod would be used
> exclusively in the production of tire cord. See* Attachment 1, providing examples of
> the end-use certifications that accompanied [            ] entries of grade 1078 and
> higher tire cord quality wire rod during this time period.

Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Response to Request for

Comments" at 2-3 (Jan. 29, 2019), **Plaintiffs' Exhibit 11** (emphasis added); Gov't Ex. 3.  Thus

Commerce, the petitioners, and Customs all were aware, as of January 29, 2019, that appropriate

end-use certifications were available for the entries that had already been admitted with entry

dates after May 21, 2018 and could be submitted to Customs if Commerce determined to require

them.  This entire discussion makes no sense if it was Commerce's intent to limit the revocation

only to entries *for which certifications had already been filed* at the time of entry.

Not only was Customs on notice that end-use certifications would not yet have been filed

for the entries made during the window period, but Customs in February 2019 *opposed* the

requirement that end-use certifications be filed with Customs at all, arguing that Commerce

should instead require the importers to retain the certifications and only provide them if requested by Customs or Commerce:

> U.S. Customs and Border Protection's (Customs') primary focus and jurisdiction is on enforcing antidumping and countervailing duties on goods when they are imported by importers of record. The end use of carbon and alloy steel wire rod may not be known when goods are imported and the cash deposits of antidumping and countervailing duties are due. Customs would have challenges to enforce end-use certifications on parties in the supply chain other than the importers of record. In addition, requiring the certifications for importations as a condition of entry is not appropriate for imports of carbon and alloy steel wire rod products that are normally admissible into the United States…
>
> If end-use certifications are to be required, *Customs recommends that importers of record be required to maintain a copy of the certifications, and be required to provide them at the request of Customs and/or Commerce.* Under such a system, Customs and/or Commerce would request and review the certifications as needed.

Memorandum from AD/CVD Operations to The File, "Discussion with U.S. Customs and Border Protection" (Mar. 20, 2019), **Plaintiffs' Exhibit 10** (emphasis added).

Thus, contrary to Customs' position, as late as March 2019, well after the effective date of the revocation, and after the entries at issue in this appeal had already entered, the question of whether the submission of end-use certifications would be required *at all*—let alone for entries made during the window period—remained in doubt.  It is thus risible for Customs to now argue that Kiswire was on notice that it needed to submit the certifications for the window period entries at the time of entry or else forfeit forever the opportunity to have the revocation—the terms of which had not yet been finalized—ever apply to those entries.

Customs eventually withdrew its opposition to the requirement that the end-use certifications be filed with the entry, and Commerce ultimately elected to require submission of the end-use certifications at the time of filing of the entry summary.

> Regarding the requirement of end-use certifications as a condition of entry for the exclusion of tire cord wire rod of grade 1078 and higher from the AD order, we solicited comments from interested parties and input from Customs on the administrability of such certifications for consideration for the final results of these

> proceedings. In their comments, the parties, who account for all of the interested parties to these proceedings, agree that end-use certifications for tire cord wire rod need not be filed as "a condition" of entry but must be required at the time of filing the Entry Summary for tire cord wire rod to be exempt from AD duties.

*Changed Circumstances Review*, 84 Fed. Reg. at 13,889.  At the same time that it adopted this language, Commerce confirmed that the revocation would be retroactive to cover entries during the window period:

> Because we determine that there are changed circumstances that warrant the revocation of the *Orders,* in part, we will instruct Customs to liquidate without regard to antidumping duties, all unliquidated entries of merchandise covered by this partial revocation that were entered, or withdrawn from warehouse, *on or after May 21, 2018*, for which an end-use certification was filed with Customs at the time of entry summary, and to refund all AD cash deposits on all such merchandise, with applicable interest.

*Id.* at 13,890 (emphasis added).

Customs now argues, however, that the term "at the time of filing the entry summary" should be read as a substantive limitation on the otherwise retroactive revocation of the *Order* for the window period prior to publication of the *Changed Circumstances Review*.  This reading makes no sense in view of the history of the proceeding described above and of the clearly-stated intent of Commerce that no antidumping duties should be imposed on entries of tire cord wire rod during the window period.  To the contrary, every party to the *Changed Circumstances Review*, as well as Customs, understood that the revocation retroactively applied to the subject entries by Kiswire.  In response to Commerce's concern regarding administrability of the end-use certification requirement on retroactive entries, Kiswire informed Commerce that end-use certifications were available for all of its shipments to be retroactively covered by the *Changed Circumstances Review*, and Kiswire provided sample end-use certifications for Commerce's review.  *See* **Plaintiffs' Exhibit 11** at Attachment 1.  The Petitioner expressly agreed that the certifications proffered by Kiswire were acceptable and that Commerce should instruct Customs

to liquidate [          ] entries "without regard to duties."  Letter from Petitioners to Sec'y

Commerce, "Comments on End Use Certifications" (Feb. 19, 2019),  **Plaintiffs' Exhibit 12** at 3;

Gov't Ex. 4 at 3.

Thus, contrary to Customs' argument, nothing in the record of the underlying *Changed*

*Circumstances Review* supports the idea that entries made during the window period were not

intended to benefit from revocation.  To the contrary, all parties were aware that the requisite

certifications were available and would be submitted to Customs.  The inescapable conclusion is

that for this limited group of entries that had entered before the revocation was finalized, the

certifications would have to be submitted after entry.  However, when Kiswire's customs broker

contacted Customs for instructions on the procedure for so doing, Customs provided no response

or guidance.  Pl. Br. at 9, 26.  Customs admits it declined to respond to the request from the

broker as to how to submit the end-use certifications.  Def. Resp. Pl. Statement of Facts para. 6.[2]

In the absence of any guidance from Customs, Kiswire instructed its broker to provide

the certifications to Customs in the form of PSCs, which is the established procedure for

amending or perfecting entries for goods that have already been admitted but remain

unliquidated.  Customs processed PSCs for eleven of Kiswire's entries during the window period

and liquidated them without antidumping duties.  Pl. Br. at 11, 32; Def. Resp. to Pl. Statement of

Facts paras. 12-19.  However, Customs notices from ACE and its Official Notice of Extension,

Suspension and Liquidation website continued to show that the window period entries subject to

---

[2] In paragraph 6 of its response to Plaintiff's statement of facts, Customs cites the Protests
at pages 120 and 214, which includes the emails cited by Plaintiff in statement of fact number 6.
The materials cited do not establish the presence of genuine dispute for purposes of USCIT R.
56(c).  Defendant admits that Kiswire's broker sent email messages to Customs.  Case No. 22-
181 Answer para. 24.  The Court should thus consider Plaintiff's statement of fact paragraph 6
undisputed for purposes Plaintiff's motion pursuant to USCIT R. 56(e).

this action were suspended "pending liquidation instructions" from Commerce. Pl. Br. at 26-27; Def. Resp. to Pl. Statement of Facts paras. 20-22 (admitting subject entries were suspended as "ADD suspend" or "pending liq instructions").[3] Thereafter, Customs gave Kiswire's broker conflicting and inconsistent advice about the status of the entries in question. *Id.* at 12-14, 28-30; Def. Resp. to Pl. Statement of Facts paras. 21-27. It is not until Customs filed its brief in this action and in need of some basis to anchor its position that Customs, for the first time, asserted that submitting the end-use certifications by means of PSCs did not satisfy the requirements established by Commerce in the *Changed Circumstances Review*. As discussed below, this position is untenable.

> **b. *Kiswire Properly Filed Its End-Use Certifications in Compliance With The Revocation Requirement.***

As explained, all parties to the *Changed Circumstances Review* were aware that the end-use certifications were available for entries during the window period and would be submitted to Customs. Pl. Ex. 3; **Plaintiffs' Exhibit 11** at 3. Customs claims its assessment of antidumping duties was permissible because end-use certifications were not filed at the time of the initial entry. Def. Br. at 18, 29. However, at the time of the initial entry summary filing between September and December 2018, Commerce had not established the requirement for the end-use certifications to be filed as the *Changed Circumstances Review* was not yet complete. When pressed, Customs declined to respond to the broker's requests about the end-use certifications. Def. Resp. to Pl. Statement of Facts para. 6. After waiting in vain for Customs to respond to its requests or provide instructions, 22-181 Answer para. 23; 22-285 Answer para. 25, Kiswire and its broker corrected its entries by filing PSCs. As discussed in Kiswire's principal brief, the PSC

---

[3] In response to Plaintiffs' Statement of Fact paragraphs 20 and 22, Customs "avers" that the notification is a "'summary of relevant information' from {Customs}." Customs' clarification is immaterial as the notices still originated from Customs' systems.

process exists precisely to address circumstances such as these, in which entry paperwork requires correction or perfection after entry but before liquidation.  Pl. Br. at 10-11.  Customs admits that a PSC is "essentially a new entry summary" and that it is a procedure through which importers "correct entry summary data presented to and accepted by {Customs}."  Def. Resp. to Pl. Statement of Facts paras. 3-5; 9-10.

Customs nevertheless contends that, with regard to the end-use certifications, submission to Customs via PSC is not sufficient and does not cure the fact that "end-use certifications were not filed at the time of the entry summary."  Def. Br. at 18.  In support, Customs cites irrelevant Customs regulations that define "entry summary," "filing," and a "statement processing method," and contradicts its own, admitted, guidance regarding PSCs.  *Id.* at 18-21.  Customs regulations, however, do not limit or control the language Commerce used to set the scope of its *Order*.  Kiswire filed the end-use certifications at the time of its corrected entry summaries pursuant to Customs' established PSC procedures.  Other than its reliance upon a blinkered, literalist, reading of the applicable language, Customs provides no credible argument as to why providing the certifications using the PSC process is unacceptable and does not satisfy the exclusion requirements of Commerce's *Order*.

Customs contends that "entry summary" is defined as "any other documentation or electronic submission of data necessary to enable {Customs} to assess duties, collect statistics on imported merchandise, and determine whether other requirements of law or regulation are met," and that "filing" means "the delivery to {Customs}, including electronic submission to the Automated Commercial Environment (ACE) or any other Customs-authorized electronic data interchange system, *together with the deposit of estimated duties*, of the entry summary documentation or data."  *Id.* at 18-19 (citing 19 C.F.R. § 141.0a) (emphasis in original).

Customs therefore claims that Commerce must have intended the "time of the entry summary filing" to mean "the date on which the required entry summary documentation or data" was submitted to Customs, "together with the deposit of estimated duties, which is required to occur within 10 working days after the date of the entry." *Id.* at 20. But the scope of Part 141 of the U.S. Code of Federal Regulations is limited to the "general requirements and procedures for the entry of imported merchandise" and only defines the terms used therein "unless the context requires otherwise or a different definition is prescribed." 19 C.F.R. §§ 141.0-141.0a. Commerce, not Customs, is the "master" of antidumping law. *Daewoo Electronics Co., Ltd. v. United States*, 6 F.3d 1511, 1516 (Fed. Cir. 1993). Customs "has a merely ministerial role in liquidating antidumping duties." *Mitsubishi Electronics America, Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994); *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1320 (Fed. Cir. 2020) ("Customs may not 'modify Commerce's determinations, their underlying facts, or their enforcement.'"). Customs regulations do not define the scope of Commerce's *Order*.

Regardless, there is no basis to find that Kiswire's submission of the corrected entry summary in the PSC and the contemporaneous filing of the end-use certifications would not meet the definitions of 19 C.F.R. § 141.0a. Nothing in the definition of "entry summary" suggests that the corrected entry summary in a PSC does not satisfy the regulatory definition. Customs implies that Kiswire did not meet the regulatory definition of entry summary "filing" because the PSCs were not "filed together with the deposit of estimated duties." Def. Br. at 19-21. Customs is simply wrong to suggest that a PSC cannot be considered an entry summary under the regulations because estimated duties are not deposited with PSCs. To the contrary, had additional duties been required at the time of the PSC filing, such duties are due to be deposited with PSCs in the normal course. *See* 22-285 Compl. at Attachment 10 ("A PSC is essentially a

new entry summary and will not be processed until *it is fully paid*.")[4] (emphasis added); Def.

Resp. to Pl. Statement of Facts paras. 9-10 (admitting to the PSCs procedures).  When clarifying

the PSC procedures in the *Federal Register*, Customs expressly required that any additional

antidumping duty cash deposits must be paid with the PSC.  *Post Summary Corrections to Entry*

*Summaries Filed in ACE Pursuant to ESAR IV Test: Modifications and Clarifications*, 78 Fed.

Reg. 69,434, 69,435 (U.S. Customs and Border Protection, Nov. 19, 2013) ("*Post Summary*

*Corrections Clarification*").  Here, no additional duties were deposited with the PSCs because

none were due.[5]

    Customs also argues that the time of the entry summary filing date cannot be changed by

a PSC.  Def. Br. at 19-20.  This is simply a canard that on its face must be ignored because the

issue is not whether the PSC changed the date of entry summary filing, but rather whether the

PSC amended the entry to comply with the requirement to submit an end-use certification, a

requirement that was not in effect when the original entry summary was filed and the

merchandise was admitted.  As discussed above, the only reasonable reading of Commerce's

*Changed Circumstances Review* is that for such window period entries the certification would

have to be filed after entry.  Furthermore, Customs' argument that "certain data elements cannot

be changed using {PSC} procedures," including the "preliminary statement print date" and the

"date of entry" conflicts with Customs' guidance on PSCs.  Customs, when establishing the PSC

---

[4] For this reason, Customs' claim that a PSC somehow changes the date on which interest starts to accrue is incorrect as a matter of law.  Def. Br. at 21 n.10; *Post Summary Corrections Clarification*, 78 Fed. Reg. at 69,435 ("Any obligations that vested under the original entry or entry summary remain valid.").

[5] There is no hint that Commerce or any party to the changed circumstances proceeding was concerned about having the end-use certifications filed at the same time as estimated duties.  Indeed, the entire purpose of the end-use certifications is to establish that no antidumping duties need to be deposited.

process, stated that a PSC "contains all of the data elements in the original entry summary and constitutes a complete replacement of that entry summary" and that "it is a complete replacement of the entry summary originally filed with {Customs} (including previously filed {PSCs}) and will be processed through all existing validations." *Post Summary Corrections to Entry Summaries Filed in ACE Pursuant to ESAR IV Test*, 76 Fed. Reg. 37,136, 37,137 (U.S. Customs and Border Protection, June 24, 2011) ("*Post Summary Corrections*"); *Post Summary Corrections Clarification*, 78 Fed. Reg. at 69,435 ("The term 'complete or full replacement' means the replacement of all data elements in an original entry summary filed in ACE with new data elements found in a superseding {PSC}.").

In practice, PSCs involve re-filing entry summaries with corrected information. *See* Protest No. 150121101162 at PDF pages 10-11, 38-39, 74-75, *Kiswire Inc. v. United States*, Ct. No. 22-181, ECF No. 14-1 (providing the original "old" entry summaries and the "amended" entry summaries in the PSCs); Protest No. 200222100800 at PDF pages 56-57, 84-85, 99-100, 115-116, 126-127, *Kiswire Inc. and Kiswire Pine Bluff Inc. v. United States*, Ct. No. 22-285, ECF No. 18-1 (same); Protest No. 200222100819 at PDF pages 50-51, 70-71, 77-78, 97-98, *Kiswire Inc. and Kiswire Pine Bluff Inc. v. United States*, Ct. No. 22-285, ECF No. 19-2 (same). Customs admits that a PSC is "essentially a new entry summary" and a procedure through which importers correct the entry summary presented to and accepted by Customs. Def. Resp. to Pl. Statement of Facts paras. 9-10.

Thus, the argument that Kiswire did not meet the requirement to file the end-use certifications at the time of the entry summary filing is without merit. Further, to the extent its regulatory definitions from Part 141 conflict with the PSC "test," Customs expressly waived those provisions related to entry/entry summary processing. *Post Summary Corrections*, 76 Fed.

Reg. at 37,138-39 ("Any provision in 19 C.F.R. including, but not limited to, provisions found in parts 141, 142, 143 and 151 thereof relating to entry/entry summary processing that are inconsistent with the requirements set forth in this notice are waived for the duration of the test.").

Additionally, Customs' argument that Kiswire was not permitted to file its end-use certifications by means of PSCs contradicts Customs regulations and practice. 19 C.F.R. § 10.112 provides that "whenever a free entry or reduced duty document, form, or statement required to be filed in connection with the entry is not filed at the time of the entry… but failure to file it was not due to willful negligence or fraudulent intent, such document, form, or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final." 19 C.F.R. § 10.112. "Customs promulgated 19 C.F.R. § 10.112 to alleviate onerous filing requirements arising out of the narrow construction of duty entitlements; therefore 19 C.F.R. § 10.112 should be liberally construed." *Aviall of Texas, Inc. v. United States*, 18 C.I.T. 727, 732, 861 F. Supp. 100, 105 (1994) (noting that 19 C.F.R. § 10.112 is "remedial" and finding that Customs "should have allowed the late filing" of a certification where the broker "forgot to renew" it); *Gulfstream Aerospace Corp. v. United States*, 981 F. Supp 654, 657, 666-670 (Ct. Int'l Trade 1997) (concluding, based on the facts of the case and the clear language and policy of § 10.112, that Gulfstream's certifications should have been accepted).

"The language of 19 C.F.R. § 10.112 does not limit its application to certain documents or exclude certain documents." *Aviall*, 18 C.I.T. at 732, 861 F. Supp. at 105. The Federal Circuit has acknowledged 19 C.F.R. § 10.112 has "preeminence over other regulatory provisions." *Ford Motor Co. v. United States*, 715 F.3d 906, 915 (Fed. Cir. 2013); Customs

Ruling Letter HQ H238490 (Sept. 2, 2014) (accepting late certifications pursuant to 19 C.F.R. § 10.112 despite the requirement in 19 C.F.R. § 10.48 that a declaration "shall be filed in connection with the entry"). Because Customs cites regulatory definitions in a manner contradictory to § 10.112, Customs' argument that "the time of the entry summary filing cannot be changed by {PSC}" as a result of those regulatory definitions lacks merit. 19 C.F.R. § 10.112 is remedial, liberally construed, and has preeminence over other regulatory provisions. PSCs are a routine part of Customs' practice, consistent with 19 C.F.R. § 10.112, to accept documentation after the time of entry and before liquidation. Customs fails to demonstrate that Kiswire did not file the end-use certifications at the time of the corrected entry summary in its PSCs or demonstrate that doing so does not meet the *Order's* exclusion requirement.

Customs also argues that it "*could not* apply" the exclusion from the *Order* to the subject entries in this case. Def. Br. at 20 (emphasis added). But Customs admits that it *did* liquidate without antidumping duties other identically situated entries from the same period that Kiswire corrected with PSCs. Def. Resp. to Pl. Statement of Facts paras. 12-19. Customs thus determined that those other entries met the end-use certification requirement, contrary to the claim that Customs "could not" liquidate the subject entries without antidumping duties. Moreover, Customs must "administer and enforce" the National Customs Automation Program, pursuant to which Customs claims it conducted the PSC test, Def. Br. at 20, "in a manner that (1) is uniform and consistent; (2) is as minimally intrusive upon the normal flow of business activity as practicable; and (3) improves compliance." 19 U.S.C. § 1412; 19 U.S.C. § 1411(a). Customs has not administered and enforced its regulations and rulings in a manner "uniform or consistent" as Customs accepted end-use certifications filed at the time of PSCs for other identically situated

entries and liquidated those entries without antidumping duty, inconsistently with its assessment of antidumping duties on the subject entries.  Def. Resp. to Pl. Statement of Facts paras. 12-19.

II.     *The Suspension of Liquidation Was Not Removed And Customs Did Not Receive Unambiguous and Public Notice of Removal of The Suspension of Liquidation.*

a.     *Customs' Decision to Assess Antidumping Duties on The Subject Entries Did Not Become Protestable Until Liquidation.*

Customs argues in the alternative that to the extent Kiswire is correct that the subject entries were outside the scope of the order, Kiswire should be denied relief because the entries deemed liquidated in October 2019—six months after the date of Message No. 9113302—and thus Kiswire's protests were untimely.  Def. Br. at 23-24.  The Customs decision at issue, however, is not whether Message No. 9113302 applied to these entries, but rather, whether the entries were subject to the *Order*, as amended by Commerce's partial revocation in the *Changed Circumstances Review*.  There was no final, protestable decision on that issue until such time as Customs liquidated the entries with antidumping duties or else they were deemed liquidated after Commerce issued liquidation instructions following the conclusion of the first review, which provided Customs with instructions for subject entries that entered during the period of October 31, 2017 to April 30, 2019.  *See* 22-181 Compl. at Attachment 15.

Message No. 9113302, by Customs' own admission, did not expressly address how the end-use certification requirement was to be satisfied for entries made during the window period. *See* Def. Br. at 27.  Customs itself was clearly uncertain whether Message No. 9113302 constituted a lifting of the suspension of liquidation for window period entries.  As discussed, Customs liquidated other Kiswire entries during the window period without antidumping duties. But as to the entries at issue in this action, Customs gave the importer inconsistent advice as to the liquidation status of its entries.  Official notices from Customs notified Kiswire that subject entries were "ADD suspended" or suspended "pending liquidation instructions from

Commerce." Def. Resp. to Pl. Statement of Facts paras. 20-22. In emails to Kiswire's broker Customs expressly denied that the entries were deemed liquidated. *See* Def. Resp. to Pl. Statement of Facts paras. 23-27. Consequently, Message No. 9113302 did not constitute unambiguous public notice that the deemed liquidation clock had begun to run. To the contrary, Customs' actions and statements gave Kiswire reason to believe the entries remained suspended pending Customs' decision of whether they should be liquidated with antidumping duties.

While Customs ultimately decided that the window period entries subject to this action were subject to antidumping duties notwithstanding the changed scope of the *Order* following the *Changed Circumstances Review*, that decision did not become final and protestable until the conclusion of the administrative review when the entries liquidated with the assessment of antidumping duties Kiswire had no choice but to wait to protest liquidation of its entries until the completion of the first administrative review.

Pursuant to 19 U.S.C. § 1504, liquidation of an entry of merchandise may be suspended as required by statute. 19 U.S.C. § 1504(a); 19 U.S.C. § 1673b(d)(2) (pursuant to which Commerce suspends liquidation of entries during an administrative review); *Oy v. United States*, 61 F.3d 866 at 870 n.5 (Fed. Cir. 1995) ("During an administrative review, the liquidation of the merchandise (final assessment of duties) is suspended by operation of law."). When a suspension is removed, Customs shall liquidate the entry within six months and any entry not liquidated by Customs within six months after it received notice of the removal of suspension is "deemed liquidated" at the rate of duty, value, quantity and amount of duty asserted by the importer of record. 19 U.S.C. 1504(d). For deemed liquidation to have occurred, "(1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at

issue within six months of receiving such notice." *Fujitsu General America, Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002). Suspension of liquidation may only be removed by "unambiguous and public" notice. *Aspects Furniture Int'l Inc. v. United States*, 42 F.4th 1366 (Fed. Cir. 2022). The "primary purpose" of § 1504 is to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002).

> Pursuant to 19 U.S.C. § 1514(a):
>
> Any clerical error, mistake of fact or other inadvertence… in any entry, liquidation, or reliquidation, and decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to…
>
>> (2) the classification and rate and amount of duties chargeable;
>>
>> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;…
>>
>> (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;
>
> shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section.

19 U.S.C. § 1514. "A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within 180 days after but not before—{the} date of liquidation or reliquidation." 19 U.S.C. § 1514(c)(3). "All findings involved in a district director's decision merge in the liquidation. It is the liquidation which is final and subject to protest, not the preliminary findings or decisions of customs officers." *United States v. Utex Int'l, Inc.*, 857 F.2d 1408, 1409-10 (Fed. Cir. 1988); *United States v. B. Holman, Inc.*, 29 C.C.P.A. 3, 14 (1941) ("All decisions of the collector involved in the ascertaining and fixing of the rate and amount of duties

chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only... against which a protest will lie.").

Here, Customs necessarily made a decision that the subject entries were subject to antidumping duties notwithstanding the *Changed Circumstances Review* revocation because Customs concluded that the entries remained subject to the *Orders* and that the submission of end-use certifications by means of PSCs did not satisfy the scope exclusion adopted by Commerce for tire cord quality wire rod. Following the issuance of Message No. 9113302, Customs neither liquidated the entries nor did Customs otherwise communicate it had made a final decision that the entries were within the scope of the *Order* as amended by the *Changed Circumstances Review*. To the contrary, notwithstanding the issuance of Message No. 9113302, Customs repeatedly advised Kiswire that its entries remained suspended and had not been deemed liquidated. Customs admits that Customs' Assistant Director of Validation and Compliance stated in an email to Kiswire's broker that "it is Customs' *position* that DOC liq message 9113302 does not apply, as the end-use certification was not filed with {Customs} at the time of entry summary, as required by the DOC liq message." Def. Resp. to Pl. Statement of Fact para. 27. Customs admits that an import specialist emailed Kiswire's broker that "because the entries were subject to ADCVD the entries were not liquidated after the review of the PSCs and instead were left in suspended status" and thrice affirmed the subject entries "are in fact suspended and have *not* deemed liquidated by operation of law." *Id.* paras. 23-26. Customs admits that notices from Customs demonstrate that the liquidation of the subject entries was suspended pursuant to the antidumping duty administrative review. *Id.* paras. 20-22. A plain reading of the facts does not support Customs' position that the instructions were unambiguous.

Contrary to Customs' argument, Customs' decision not to apply the instructions in Message No. 9113302 "including the legality of all orders and findings entering into the same," only became "final and conclusive" pursuant to 19 U.S.C. § 1514(a) upon liquidation and it would have been premature for Kiswire to protest prior to the liquidation that resulted from Customs' decision (*i.e.*, after conclusion of the administrative review). 19 U.S.C. § 1514(c)(3) provides that "a protest of a *decision, order or finding* described in subsection (a) shall be filed… within 180 days *after* but not before—{the} date of liquidation." 19 U.S.C. § 1514(c)(3) (emphasis added). "*All* findings" involved in Customs decision "merge in the liquidation." *Utex*, 857 F.2d at 1409-10 (emphasis added). Only the liquidation is "final and subject to protest, not the preliminary findings or decisions of customs officers." *Id.*

Customs contends in its brief that it made a decision that it would not apply the revocation or its instructions to the subject entries: "Because plaintiffs forwent the filing of such a timely protest… the entries at issue have become 'final and conclusive upon all persons' under 19 U.S.C. § 1514(a) as to *Customs' decision* not to apply the instructions in Message No. 9113302," and "Customs' *non-application* of the instructions in Message No. 9113302 to the subject entries is 'final and conclusive upon all persons.'" Def. Br. at 24-26 (emphasis added). Customs further stated that its "actions and communications were consistent with the fact that the entries were not covered by the liquidation instructions in Message No. 9113302. Thus, any indication by {Customs} that the entries remained suspended merely reflected *its views* that Message No. 9113302 did not apply." *Id*. at 34 (emphasis added). Customs' decision that Message No. 9113302 did not apply, however, was remediable only upon liquidation of the entries.

The Federal Circuit has held that preliminary and interlocutory decisions—including those that affect the timing of liquidation—are remediable in an action to contest the denial of a protest of liquidation. *See Cemex S.A. v. United States*, 384 F.3d 1314, 1324 (Fed. Cir. 2004) ("Customs here made a decision regarding *liquidation*… Customs chose to effect {the entries'} liquidation by posting Bulletin Notices" and therefore "Customs' actions constitute a 'decision' within the context of 1514(a).") (emphasis in original). For example, in *Chemsol LLC v. United States*, the importer commenced an action pursuant to 28 U.S.C. § 1581(i) to enjoin Customs from extending the liquidation of its entries. *Chemsol LLC v. United States*, 37 C.I.T. 365, 370, 901 F. Supp. 2d 1362, 1367 (2013) *aff'd* 755 F.3d 1345, 1350-54 (Fed. Cir. 2014). The Government argued that Customs' decision to extend liquidation merged with the ultimate liquidation. *Chemsol*, 755 F.3d at 1351 ("As the Government points out, 'this approach makes sense—it recognizes that the *decision* to extend the period for liquidation may be necessary to determine the ultimate country of origin, classification, or rate assessed and therefore should be *subsumed* in the liquidation for purposes of administrative and judicial review.'") (emphasis added). The court found it lacked jurisdiction pursuant to § 1581(i) because "Customs' act of extending the liquidation period—and the administrative protest that plaintiffs may file once its entries have liquidated—is precisely the type of agency action that is remediable by § 1581(a)." *Chemsol*, 901 F. Supp. at 1367. When affirming the court's decision, the Federal Circuit found that "this case presents exactly the scenario in which '§1514's protest provisions {can} be invoked' because 'Customs engage{d} in some sort of decision-making process,'" and "any objections to the validity of the extensions would be merged into the later liquidation." *Chemsol LLC v. United States*, 755 F.3d 1345, 1351 (Fed. Cir. 2014). The Federal Circuit also noted that

Customs had notified the plaintiff-appellant of the extension of liquidation, like Customs notified Kiswire here of the continued suspension of liquidation on the subject entries.  *Id.*

Similarly, in *Borusan Mannesmann Boru Sanayi ve Ticaret v. United States*, a case brought pursuant to 28 U.S.C. § 1581(a), the court rejected plaintiff's claim for administrative refunds, where "after reviewing the {PSC}"—but before liquidation—"Customs 'determined that there was insufficient information provided to indicate that the importer was within the scope of the approved exclusion.'"  *Borusan Mannesmann Boru Sanayi ve Ticaret v. United States*, 578 F. Supp. 3d 1333, 1342-44 (Ct. Int'l Trade 2022).  Notably, in that case, the Government maintained that, "the {PSC} ensures that {Customs} has the relevant information at the time of liquidation; if the corrected information submitted via {PSC} lowers the duties, a refund will be issued *upon liquidation*."  *Id.* at 1342 (emphasis added).  Consistent with *Chemsol* and *Borusan*, Customs' interim decision that Message No. 9113302 did not apply operated only to continue the suspension of liquidation, not unlike Customs' decision to extend liquidation in *Chemsol*, and its decision did not become protestable until liquidation, which did not occur until the conclusion of the first administrative review.  *See also* 19 U.S.C. § 1514(a) (permitting review of *any* order or finding upon challenge to liquidation) (emphasis added); 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action … not directly reviewable is subject to review on the review of the final agency action"); *Hilsea Investment Ltd. v. Brown*, 18 C.I.T. 1068, 1071 (1994) ("The court can review interlocutory decisions subsumed in the final determination, including those relating to methodology or procedure.").

Customs claims that "as a matter of law" either the subject entries were covered by Message No. 9113302, "in which case" allegedly "liquidation by operation of law would have occurred in October 2019, or they were not {covered by Message No. 9113302}" and thus

covered by the administrative review. Def. Br. at 33. But whether or not the entries were covered by Message No. 9113302 *did not* finally resolve the question of whether the entries would be liquidated with the assessment of antidumping duties. To the contrary, Customs decision that Message No. 9113302 did not apply left open the final treatment of those entries on liquidation. It was only after Commerce's first administrative review and Customs had received final liquidation instructions covering all entries made during that review (which included the window period) that Customs had to confront the question of whether it would liquidate the entries with antidumping duties or whether Customs would give effect to the PSCs filed by Kiswire and liquidate the entries without antidumping duties pursuant to the terms of the revocation. Customs decided that question for three of the entries on September 20 and 21, 2021 when it issued notices liquidating those entries "as entered"—that is with antidumping duties. Def. Resp. to Pl. Statement of Facts para. 28. For the remaining entries, Customs took no action, and those entries therefore were liquidated by operation of law on September 23 and 24, 2021, six months after the issuance of Commerce's liquidation instructions for entries made during the period by the first administrative review. *Id.* para. 29; 22-285 Answer para. 5 ("Admits that Entry Nos. DQ7-0221459-3, DQ7-0221316-5 and DQ7-0221382-7 deemed liquidated on September 23, 2021."); Def. Br. at 11 ("No official action was taken on the warehouse entries before the entires were deemed liquidated, which occurred six months after the publication of the removal of suspension of liquidation in the *1st AR Final Results*.").

Misapplication of the *Order* by Customs is subject to protest. In *Xerox Corp. v. United States*, Customs levied antidumping duties on photocopier feed belts as if they were subject to the antidumping duty order on industrial feedbelts. *Xerox Corp. v. United States*, 289 F.3d 792, 793 (Fed. Cir. 2002). The Federal Circuit noted that "when merchandise may be subject to an

antidumping duty order, Customs makes factual findings to ascertain what the merchandise is and whether it is described in an order," and that "such findings of Customs as to 'the classification and rate and amount of duties chargeable are protestable to Customs under 19 U.S.C. § 1514(a)(2)." *Xerox*, 289 F.3d at 794; *LDA Incorporado v. United States*, 79 F. Supp. 3d 1331, 1343 (Ct. Int'l Trade 2015) ("The court finds that Plaintiff's merchandise was finished electrical conduit and, therefore, specifically excluded from the Orders. Plaintiff's Entry No. 438–0698613–9 was not covered by the Orders and was not subject to any corresponding antidumping or countervailing duties. {Customs} thus incorrectly liquidated Plaintiff's merchandise, charging additional duties that were not owed.").

The Federal Circuit expounded on *Xerox* in *Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020). The Federal Circuit has held that: "Customs is both empowered and obligated to determine in the first instance whether goods are subject to existing antidumping or countervailing duty orders. While Customs may not expand or alter the scope of such orders, its authority and responsibility to *determine whether they apply* does not dissipate simply because an order lacks perfect clarity." *Sunpreme*, 946 F.3d at 1317 (emphasis added). The Federal Circuit thus clarified that neither *Xerox* nor its decision in *Mitsubishi*, both of which described Customs' role as "ministerial," limited Customs' role to exclude interpretations of antidumping duty orders, and held that "Customs has the authority to suspend liquidation of goods when it *determines* that the goods fall within the scope" of an antidumping duty order. *Id.* at 1321 (emphasis added). The Federal Circuit reasoned that "Customs is tasked with *determining*, for every imported product, whether the product falls within the scope of an antidumping or countervailing duty order," and that "necessarily entails evaluating both the product and the order." *Id.* at 1320 (citing 19 U.S.C. § 1500(c)) (emphasis added). Pursuant to *Xerox* and

*Sunpreme*, Customs' act here, enforcing the *Order* on the subject entries, involved the "determination" as to whether the *Order* applies based on the circumstances before it, which Customs undisputably did in this case as evidenced by the official notices from Customs and explanations from Customs' personnel.  Def. Resp. to Pl. Statement of Fact paras. 20-29.

Customs decision interpreting and applying the *Order* and liquidation instructions from Commerce is reviewable pursuant to 19 U.S.C. § 1514 and 28 U.S.C. § 1581(a).  In *Thyssenkrupp Steel North Am. v. United States*, Commerce issued liquidation instructions pursuant to an administrative review and Customs liquidated the entries covered by the instructions.  *Thyssenkrupp Steel North Am. v. United States*, 886 F.3d 1215 (Fed. Cir. 2018). Thereafter, the U.S. International Trade Commission determined that revocation of the antidumping duty order would not likely lead to a material injury to the domestic industry, which provoked Commerce to subsequently revoke the order and issue revocation instructions to Customs regarding "unliquidated entries."  *Id.* at 1219-20.  Thyssenkrupp then protested the liquidation of its entries pursuant to the first set of instructions, and when Customs denied the protests, Thyssenkrupp appealed to the CIT.  *Id.* at 1220.  The CIT concluded that Customs' execution of the instructions was ministerial as Customs simply carried out the instructions from Commerce, and dismissed Thyssenkrupp's case for lack of subject matter jurisdiction.  *Id.* at 1223.  The Federal Circuit disagreed, finding the protests permissible pursuant to 19 U.S.C. § 1514(a) and that jurisdiction may be had pursuant to 28 U.S.C. § 1581(a).

The Federal Circuit reasoned that Customs interpreted the instructions from Commerce and "decided" that the instructions "did not actually require any change" to the liquidations at issue.  *Id.* at 1224.  The Federal Circuit explained that Customs' decision "is fairly characterized as having 'enter{ed} into' the liquidation determinations challenged in the protest."  The Federal

Circuit noted that Customs "had to resolve a genuine dispute about the meaning of the term

'unliquidated {entries}' in {Commerce's} instructions and whether, based on that term,"

Customs' decision required alteration. Thus "judgment was required." *Id.* at 1225. The Federal

Circuit also stated:

> The government cites nothing in the statute or legislative history that supports its
> view that the revoked antidumping duties continue to apply to entries that occurred
> after the revocation date, just because there was an initial liquidation determination
> as to those entries, even when that determination is subject to a timely filed protest.
> Nor does the government's view make sense in terms of the basic policy: *Commerce
> has determined that entries made on or after the revocation date do not warrant
> antidumping duties*, yet the government's view would apply such duties to those
> entries.

*Id.* at 1227 (emphasis added).

Like in *Thyssenkrupp*, Commerce's *Changed Circumstance Review* did not define the

term "at the time of the entry summary" and Customs had to determine whether that requirement

was satisfied by providing certifications with PSCs. Also like in *Thyssenkrupp*, the purpose of

this specific *Changed Circumstances Review* was to provide relief from antidumping duties on

entries of tire cord quality wire rod, including the window period entries. The *Changed

Circumstances Review* and Commerce's instructions set the effective date of the revocation as

the date of the *Order*, May 21, 2018. In order words, here, as in *Thyssenkrupp*, "Commerce has

determined that entries made on or after the revocation date do not warrant antidumping duties,

yet the government's view" would inappropriately apply such duties to the window period

entries. *See id.* at 1227.

Here, Kiswire contends that the *Order* was revoked as to the subject entries by the

*Changed Circumstances Review*. Customs disagreed and continued to suspend the liquidation of

the entries. That decision became ripe for protest when the suspension of liquidation was lifted.

As Customs notes, "in the government's view, because the correct instructions that applied to the

subject entries were in Message No. 1118402, the protests were not untimely, but *review is limited* solely to whether {Customs} correctly interpreted Commerce's instructions in Message No. 1118402," in other words, whether the subject entries are covered by the *Order*. Def. Br. at 25 n.11 (emphasis added). As a result of the revocation, they are not.

As a result of Customs decision that Message No. 9113302 did not apply, the suspension of liquidation was not removed. Defendant admitted that the entries liquidated or deemed liquidated in September 2021, six months after the conclusion of first administrative review. Def. Resp. to Pl. Statement of Facts paras. 28-29; 22-285 Answer paras. 5, 47; Def. Br. at 11 ("No official action was taken on the warehouse entries before the entries were deemed liquidated, which occurred six months after the publication of the removal of suspension of liquidation in the *1st AR Final Results*."); 19 C.F.R. § 159.52; 19 U.S.C. § 1504. Deemed liquidation could not have occurred. *Fujitsu*, 283 F.3d at 1376. Customs' arguments that the window period entries deemed liquidated should be rejected.

      b.   *Message No. 9113302 Did Not Provide Unambiguous and Public Notice Lifting the Suspension of Liquidation.*

For deemed liquidation to have occurred, "(1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice." *Fujitsu*, 283 F.3d at 1376. Notice of removal of suspension of liquidation must be "unambiguous and public." *Aspects Furniture*, 42 F.4th at 1370; *Cemex*, 384 F.3d at 1320. In its motion for summary judgment, Kiswire argued that the *Changed Circumstances Review* and Message No. 9113302 did not provide unambiguous and public notice lifting the suspension of liquidation. Pl. Br. at 24. Customs argues that the "ambiguity requirement" does not concern the issue of "whether a notice unambiguously 'applies' to a specific set of entries" and that "there is

no ambiguity that {Customs} received public notice of the removal of suspension for entries that were covered by Commerce's instructions in Message No. 9113302." Def. Br. at 27. Contrary to its claims, Customs' argument proves the point. Message No. 9113302 did not provide notice of the removal of suspension of liquidation for the subject entries. *Fujitsu*, 283 F.3d at 1376.

Customs claims that "the fact that the subject entries were not covered by the scope of those instructions (because end-use certifications were not filed at the time of entry summary) does not mean that Commerce's instructions to terminate the suspension for entries that *were* covered was ambiguous." Def. Br. at 27 (emphasis in original). Also, Customs states "there is no indication in either the *CCR Final Results* or Commerce's subsequent instructions to {Customs in Message No. 9113302} that there was any set of entries that was intended to be covered by Commerce's partial revocation but for which end-use certifications were not filed at the time of entry summary." *Id.* at 29. In other words, Customs argues that Message No. 9113302 provided unambiguous and public notice lifting the suspension of liquidation for entries of tire cord quality wire rod "for which an end-use certification was filed with {Customs} at the time of entry summary." *See* Message No. 9113302. But both Kiswire and Customs agree that Kiswire did not file end-use certifications at the time of entry summary. Rather, it filed those certifications after entry, in the form of PSCs. The question of whether the window period entries should have been liquidated without antidumping duties thus cannot be resolved solely by reference to Message No. 9113302. Rather, as discussed, making that determination requires (i) an interpretation of the underlying *Changed Circumstances Review*, including Commerce's unambiguous statement that the revocation was retroactive to May 21, 2018 and the fact that all parties – including Customs – were aware during the course of the *Changed Circumstances Review* that no end-use certifications had been submitted at the time of entry for these window

period entries, and (ii) an analysis of the legal consequences flowing from the submission of

PSCs.  None of those points was addressed in Message No. 9113302.  It follows that Message

No. 9113302 could not provide unambiguous public notice lifting suspension of liquidation for

entries of tire cord quality wire rod for which end-use certifications were filed after entry by

means of PSCs.

Customs again argues that Kiswire was aware of the certification requirement prior to the

*Final Results* of the *Changed Circumstances Review* and that Commerce, Kiswire, and the

petitioners "sought to address the concern with entries filed after May 21, 2018 but before the

publication of the *CCR Preliminary Results*."  Def. Br. at 29-31.  First, Customs points out that

Commerce solicited comments because of the "apparent discrepancy between the retroactive

revocation of entries of grade 1078 and higher tire cord wire rod to May 21, 2018 and the

requirement of end-use certifications as a condition of entry."  *Id.* at 31.  But, Message No.

9113302 does nothing to resolve that discrepancy: "{Customs} is directed to terminate the

suspension of liquidation for all shipments of grade 1078 and higher tire cord quality wire rod

*entered, or withdrawn from warehouse, for consumption on or after 5/21/2018*, for which an

end-use certification was filed with {Customs} *at the time of entry summary*."  Message No.

9113302 (emphasis added).  The "discrepancy" between the retroactive application of the

revocation and the requirement to submit end-use certifications at the time of the entry summary

evidences that Message No. 9113302 was not unambiguous.

Second, Customs emphasizes that Kiswire informed Commerce that each "shipment" of

tire cord quality wire rod during the window period was "accompanied" by an end-use certificate

and that the petitioners' review request "placed potential importers on notice that an end-use

certification would be necessary."  Def. Br. at 32.  As explained, there is no dispute that every

party to the *Changed Circumstances Review* understood that the revocation would retroactively apply to Kiswire's shipments of tire cord quality wire rod, or that end-use certifications were available and would be submitted for the window period entries.  Pl. Ex. 3; **Plaintiffs' Exhibit 10** through **Plaintiffs' Exhibit 12**.  Accordingly, no party proposed alterations to the end-use certification requirement, despite the "discrepancy," because it was not clear that any changes were necessary, especially given that Customs recommended that end-use certifications should be maintained by importers but not submitted.  **Plaintiffs' Exhibit 10**.  Because no party proposed changes, the "discrepancy" between the retroactive application and the requirement to submit end-use certifications at the time of the entry summary persisted.  The *Changed Circumstances Review* and Message No. 9113302 are thus not unambiguous.

Customs' own conduct offers the strongest evidence that Message 9113302 was not an unambiguous public notice of the lifting of suspension of liquidation for purposes of triggering the deemed liquidation statute.  Customs argues that whether the *Changed Circumstances Review* "constituted an unambiguous and public notice of removal of suspension of liquidation does not turn on {Customs'} conduct, nor {Customs'} systems of record" because "Commerce, not Customs, is the authority that controls lifting of the suspension of liquidation." Def. Br. at 33-34.  Customs cites as support *Aspects Furniture*, where the court found harmless error regarding Customs' mislabeling of an entry as "reliquidated" rather than "liquidated," and *Fraserview Remanufacturing Inc. v. United States*, for the general proposition that deemed liquidation cannot occur unless Commerce has notified Customs that suspension has been lifted. *Id.* at 33-34 (citing *Aspects Furniture*, 42 F.4th at 1372 and *Fraserview Remanufacturing Inc. v. United States*, 678 F. Supp. 3d 1371 (Ct. Int'l Trade 2024)).  Both cases are inapposite.

The Federal Circuit in *Aspect Furniture* found the mislabeling to be harmless error and stated: "to be clear, we do not hold that cognizable harm cannot result from Customs mislabeling its key notices. Rather we hold that, in this case, Appellants have not alleged any such harm." *Aspects Furniture*, 42 F.4th at 1372. The issue in *Fraserview* was whether the statutory requisites for deemed liquidation were met where Customs mistakenly issued bulletin notices that entries had deemed liquidated but Commerce had not issued liquidation instructions as to the entries. *Fraserview*, 678 F. Supp. 3d 1384-87. In fact, *Fraserview* stands for the proposition that the subject entries here were not liquidated because the statutory requisites for deemed liquidation have not been met, specifically the suspension of liquidation was not removed and Customs did not receive notice removing the suspension of liquidation. *Fraserview*, 678 F. Supp. 3d 1384. Neither *Aspects Furniture* nor *Fraserview* demonstrates that Customs' inconsistent treatment of identical entries—subject to the same administrative determination and instructions from Commerce—evidences that Commerce's instructions were unambiguous. Here, Customs liquidated some entries without antidumping duties pursuant to Message No. 9113302 while at the same time deciding that Message No. 9113302 did not apply to other identical entries from the window period.

Customs claims that its actions and communications reflected "its views that Message 9113302 did not apply," and not that the Message constituted "ambiguous notice in a way that caused the entries to remain suspended." Def. Br. at 34. Again, Customs' argument that "the entries were not covered by the liquidation instructions in Message No. 9113302," *Id.* at 34, necessarily indicates that the Message did not provide unambiguous and public notice to Customs that lifted the suspension of liquidation. The undisputed facts demonstrate that Customs treated the entries as remaining suspended pursuant to the first administrative review

and so informed Kiswire after Message No. 9113302 was issued, thus evidencing that Message No. 9113302 did not unambiguously or publicly provide notice lifting the suspension of liquidation. *See* Def. Resp. to Pl. Statement of Facts paras. 21-27.

Finally, accepting Customs' alternative argument that the entries were deemed liquidated six months after Message No. 9113302 was issued would improperly reward Customs for misinforming Kiswire of the liquidation status of its entries. It is undisputed that official notices from Customs indicated that the entries remained suspended, and Customs also so advised the broker in multiple email communications. Def. Resp. to Pl. Statement of Facts paras. 20-27. Thus, unlike in *Fraserview*, here Customs' misinformation would have caused cognizable harm to Kiswire by inducing it to forego what Customs now contends should be held to have been its only opportunity to protest Customs' decision that the entries should be assessed antidumping duties. From the time the *Changed Circumstances Review* was issued, Kiswire was diligent in prosecuting its claim that the subject entries were outside the scope of the orders and that it was entitled to refunds of antidumping duties deposited on entry. For nearly a two-year period following the publication of the *Changed Circumstances Review*, Customs either refused to respond to reasonable requests for guidance or else provide responses that could only be reasonably interpreted as indicating that no final decision had been made as to the assessment of antidumping duties and that the entries remained suspended. Customs should not be heard to now claim on this record that Kiswire was on notice that a final protestable decision had been made as to the subject entries.

III.    *The Government's Evidentiary Objections Should Be Overruled.*

Customs objects to certain of Kiswire's statements of material fact. USCIT Rule 56.3(c) provides that each statement of material fact as to which there is no genuine issue to be tried must be followed by a citation to evidence which would be admissible. Pursuant to USCIT Rule

56(c)(2), parties may object that material cited to support a fact cannot be presented in a form

that would be admissible in evidence.  Customs objects that emails that Kiswire that submitted as

evidence contain hearsay statements offered for the truth of the matter asserted.  *See* Def. Resp.

to Pl. Statement of Facts paras. 6, 23-27.  These objections should be overruled because the cited

emails are not hearsay statements and are not offered for the truth of the matter asserted.

In paragraphs 23 to 27 of Kiswire's statement of facts, Kiswire quoted email

correspondence from Customs's Supervisory Import Specialist and Assistant Director for

Validation and Compliance to Kiswire's broker explaining and advising that subject entries are

suspended and not deemed liquidated.  Pl. Statement of Fact paras. 23-27.  Customs objects to

the statements asserted by the Customs Supervisory Import Specialist and Customs Assistant

Director for Validation and Compliance as hearsay.  Customs' hearsay objections to the emails

from its own personnel should be overruled because the emails from Customs personnel are not

hearsay statements pursuant to Federal Rule of Evidence 801(d)(2).

The rule against hearsay prescribes that hearsay statements are not admissible unless the

rules of evidence provide otherwise.  Fed. R. Evid. 802.  Pursuant to Rule 801(d)(2), a statement

is not hearsay if it is a statement from an opposing party offered against that party and it:

> (A) was made by the party in an individual or representative capacity;
> (B) is one the party manifested that it adopted or believed to be true;
> (C) was made by a person whom the party authorized to make a statement on the subject;
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2)(A)-(E).

The emails from Customs about the subject entries meet subsections (A) through (D) of

Rule 801(d)(2).  They are statements from Customs in a representative capacity.  The emails

manifested that the statements therein were believed to be true.  And the emails from Customs'

personnel are made by a person whom Customs authorized to make the statement and were made by employees within the scope of the employment relationship. The emails are thus not inadmissible hearsay statements pursuant to Rule 801(d)(2). Additionally, the emails meet the present sense impression exception to hearsay as the emails constitute statements describing the condition of the entries after the declarant perceived it. Fed. R. Evid. 803(1) ("The following are not excluded by the rule against hearsay regardless of whether the declarant is available as a witness:… a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."). Therefore, Customs objections to paragraphs 23 to 27 should be overruled.

Also, in paragraph 6 of Plaintiff's statement of facts, Kiswire stated that its "broker *sent* several email messages to Customs requesting instructions as to the procedures Customs was requiring of importers to receive refunds of AD duties on previously entered tire cord wire rod that was no longer subject to the AD order." Pl. Statement of Fact No. 6 (emphasis added). Kiswire submitted and cited the emails that were sent by Kiswire's broker to Customs. *See* Case No. 22-281 Compl. at Attachment 9; Case No. 22-285 Compl. at Attachment 11. The cited attachments themselves *are* the emails from Kiswire's broker to Customs requesting instructions regarding the procedures for submission of the end-use certifications during the window period. The emails are thus not an out of court statement offered for the truth of the matter asserted. Rather the emails speak for themselves. Customs objection to paragraph 6 of Plaintiff's Statement of Facts should be overruled.

Customs also objects that certain statements are not "material" or "relevant" to this action. *See* Def. Resp.to Pl. Statement of Facts paras. 12-19. Paragraphs 12 to 19 of Plaintiff's statement of facts describe other, identically situated entries of tire cord quality wire rod which

Customs liquidated without antidumping duties. Customs argues that these facts, which Customs admits, are not material or relevant to this matter pursuant to USCIT Rule 56.3 or Federal Rules of Evidence 401-02. *Id.* at paras. 12-19. A "material fact" is defined as "a fact that is significant or essential to the issue or matter at hand" and "material" means "having some logical connection with the consequential facts," and "of such a nature that knowledge of the item would affect a person's decision making." *Material Fact*, Black's Law Dictionary at 1777 (8th ed. 2004); *Material*, Black's Law Dictionary at 3099 (8th ed. 2004). Pursuant to Federal Rule of Evidence 401, evidence is "relevant" if "it has a tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401.

The issue in this case is whether Customs should have liquidated the subject entries without antidumping duties. The fact that Customs has liquidated other, identically situated entries without antidumping duties is both material and relevant to this case. Customs admits that PSCs and end-use certifications were filed for the other, identically situated entries. Def. Resp. to Pl. Facts paras. 12-19. Customs also admits that those other entries contain tire cord quality wire rod and that it liquidated the entries with 0.00 percent antidumping duties, refunding the antidumping duty cash deposits. *Id.* at paras. 12-19. Customs' treatment of these entries are significant and have a logical connection to the consequential facts. Additionally, Customs' treatment of these entries tends to make consequential facts more or less probable than they would be without the evidence, specifically regarding whether Customs received unambiguous and public notice lifting suspension of liquidation and whether PSCs constitute the filing of corrected entry summaries. Customs objection to paragraphs 12 through 19 of Plaintiff's Statement of Facts should be overruled because the facts are material and relevant.

Lastly, Kiswire cited attachments to its complaints as support for paragraphs 22 and 24 of its Statement of Facts, specifically Attachment 16 of the complaint in Case No. 22-181 and Attachment 3 of the complaint in Case No. 22-285.  Pl. Statement of Facts paras. 22, 24. Customs objects that citations to Kiswire's complaint is not admissible.  Def. Resp. to Pl. Facts paras. 22, 24.  However, Kiswire's citations in paragraphs 22 and 24 were to the attachments, in other words: the *evidence*, that it filed with its complaints.  Attachment 16 of the complaint in Case No. 22-181 consists of emails between Kiswire's broker and Customs and Attachment 3 of the complaint in Case No. 22-285 consists of entry summary query responses confirming entry statuses and the filing of the PSCs for subject entries.  Customs objections provides no basis as to why these emails or entry summary query responses are not admissible evidence.  Customs objections to paragraphs 22 and 24 of Plaintiff's Statement of Facts should be overruled.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court reject Customs' cross-motion for summary judgment and grant Plaintiffs' motion for summary judgment.

Respectfully submitted,

**MORRIS MANNING & MARTIN LLP**
1333 New Hampshire Avenue NW, Suite 800
Washington, D.C. 20036
(202) 216-4819

/s/ R. Will Planert
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Stephen A. Morrison
Ryan R. Migeed

**SANDLER TRAVIS & ROSENBERG, P.A.**
675 Third Avenue, Suite 1805
New York, NY 10178
(212) 549-0150

/s/ Patrick D. Gill
Michael S. O'Rourke
Patrick D. Gill

*Attorneys for Plaintiffs*

Dated:  May 1, 2024

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with the Standard

Chambers Procedures of the U.S. Court of International Trade in that it contains 13,631 words

including text, footnotes, and headings and excluding the table of contents, table of authorities

and counsel's signature block, according to the word count function of Microsoft Word 2016

used to prepare this brief.

/s/ R. Will Planert
R. Will Planert

Dated:  May 1, 2024

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| KISWIRE INC. and KISWIRE PINE BLUFF INC., | **NON-CONFIDENTIAL** |
| Plaintiffs, | Proprietary Information Removed from Brief Pages 16 and 19, and from Exhibits 11 and 12. |
| v. | |
| UNITED STATES, | Consol. Court No. 22-00181 |
| Defendant. | |

**PLAINTIFFS' RESPONSE TO**
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rules 56(c) and 56.3(b)-(c) of the Rules of the United States Court of International Trade (USCIT), Plaintiffs Kiswire Inc. and Kiswire Pine Bluff Inc. ("Plaintiffs" or "Kiswire") hereby respond to the statements of undisputed material facts asserted by Defendant, the United States ("Defendant" or "Customs").  Defendant's Statement of Undisputed Material Facts, *Kiswire Inc. and Kiswire Pine Bluff Inc. v. United States,* No. 22-00181 (Mar. 25, 2024), ECF No. 38-1.  Rule 56.3(b) requires that the papers opposing Defendant's cross-motion for summary judgment include Kiswire's responses to correspondingly numbered paragraphs proposed by Defendant.  Accordingly, Kiswire reproduces verbatim Defendant's statements of fact and provides its responses related to each of those paragraphs.  Kiswire's responses to Defendant's statement of undisputed material facts are as follows:

1.    The entries at issue were entered for consumption, entered for warehouse, or withdrawn for consumption on the following dates under the following entry types:

| Entry Number | Date of Entry | Entry Type |
|---|---|---|
| DQ7-0221316-5 | September 5, 2018 | 21 - Warehouse |
| DQ7-0221382-7 | September 6, 2018 | 21 - Warehouse |
| DQ7-0221399-1 | September 6, 2018 | 38 - Withdrawal |
| DQ7-0221459-3 | September 11, 2018 | 21 - Warehouse |
| DQ7-0221433-8 | September 11, 2018 | 38 - Withdrawal |
| DQ7-0221727-3 | September 14, 2018 | 38 - Withdrawal |
| DQ7-0221785-1 | September 18, 2018 | 38 - Withdrawal |
| DQ7-0221999-8 | September 26, 2018 | 38 - Withdrawal |
| DQ7-0222001-2 | September 26, 2018 | 38 - Withdrawal |
| DQ7-0222045-9 | September 27, 2018 | 38 - Withdrawal |
| DQ7-0222064-0 | September 28, 2018 | 38 - Withdrawal |
| DQ7-0222061-6 | September 28, 2018 | 38 - Withdrawal |
| DQ7-0222391-7 | October 15, 2018 | 07 - Consumption |
| DQ7-0223423-7 | November 16, 2018 | 07 - Consumption |
| DQ7-0224287-5 | December 14, 2018 | 07 - Consumption |

*See* Protest and Entry Papers from the Base Metals Center, No. 22-00181, ECF No. 14-1; Protest and Entry Papers from the Machinery Center, No. 22-00285, ECF No. 18-1; Protest and Entry Papers from the Base Metals Center, No. 22-00258, ECF No. 19-1.

**Response:**    Admits only to the extent supported by the protest and entry papers,

otherwise denies.

2.    The merchandise in Consumption Entry Nos. DQ7-0222391-7, DQ7-0223423-7, and DQ7-0224287-5 was imported by or sold to Kiswire Inc. *See* Protest and Entry Papers from the Base Metals Center, No. 22-00181, ECF No. 14-1 at 118, 160, and 252.

**Response:**    Admits.

3.    The merchandise in Warehouse Entry Nos. DQ7-0221316-5 and DQ7-0221382-7 was imported by or sold to Kiswire Pine Bluff Inc. *See* Protest and Entry Papers from the Machinery Center, No. 22-00285, ECF No. 18-1 at 431 and 485.

**Response:**    Admits.

4.    The merchandise in Warehouse Entry No. DQ7-0221459-3 was imported by or sold to Kiswire Inc. *See* Protest and Entry Papers from the Base Metals Center, No. 22-00285, ECF No. 19-1 at 421.

**Response:**    Admits.

5.      Warehouse Entry No. DQ7-0221316-5 was entered with an estimated dutiable value of $1,232,477. *See* Protest and Entry Papers from the Machinery Center, No. 22-00285, ECF No. 18-1 at 415.

Response:      Admits.

6.      The collection data for Warehouse Entry No. DQ7-0221316-5 indicates that Kiswire was estimated to deposit antidumping duties in the amount of $506,548.05, which represents 41.10 percent of the total entered value of $1,232,477. ECF No. 18-1 at 418.

Response:      Admits.

7.      The collection data for Warehouse Entry No. DQ7-0221316-5 indicates that Kiswire deposited a total of $670,844.48 for the merchandise in this warehouse entry. ECF No. 18-1 at 418.

Response:      Admits.

8.      The liquidation data for Warehouse Entry No. DQ7-0221316-5 indicates that the Ascertained Amount of duties owed for this entry was calculated at $506,548.05 and that the Paid Amount of duties was $670,844.48. ECF No. 18-1 at 420. A Refund Amount equal to the difference of these values was calculated to be $164,296.43. ECF No. 18-1 at 418, 420.

Response:      Admits.

9.      On September 17, 2018, domestic interested parties placed public a letter on the record for Commerce proceeding A-580-891 regarding "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Petitioners' Request for Changed Circumstances Review and Partial Revocation Request." *See* Plaintiffs' Response to Defendant's First Interrogatories and Requests for Production at Ex. 5 (Government Exhibit (Gov't Ex.) 1).

Response:      Admits.

10.     On December 21, 2018, the Department of Commerce (Commerce) placed a public letter on the record for Commerce proceeding A-580-891 regarding "Antidumping Duty Changed Circumstances Reviews of Carbon and Alloy Steel Wire Rod from the Republic of Korea (Korea) and the United Kingdom." *See* Plaintiffs' Response to Defendant's First Interrogatories and Requests for Production at Ex. 6 (Gov't Ex. 2).

Response:      Admits.  Avers that Commerce also placed a letter from Customs onto the

record of the *Changed Circumstances Review*.  *See* Plaintiffs' Exhibit 10.

     **11.**    On January 29, 2019, Bekaert Corporation, Kiswire America Inc., Kiswire Inc., Kiswire Pine Bluff Inc., and Tokusen U.S.A., Inc. placed a public letter on the record for Commerce proceeding A-580-891 regarding "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom, Changed Circumstances Reviews: Response to Request for Comments." *See* Letter from Bekaert Corporation, Kiswire America Inc., Kiswire Inc., Kiswire Pine Bluff, and Tokusen U.S.A., Inc. (Jan. 29, 2019), available at https://access.trade.gov/ [Barcode: 3788322-01] (Gov't Ex. 3).

     <u>**Response:**</u>    Admits.  Avers that Kiswire also submitted a proprietary version of the letter onto the record of the *Changed Circumstances Review*.  *See* **Plaintiffs' Exhibit 11**.[6]

     **12.**    On February 19, 2019, Nucor Corporation, Optimus Steel LLC, Keystone Consolidates Industries, Inc., and Charter Steel placed a public letter on the record for Commerce proceeding A-580-891 regarding "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Comments on End-Use Certifications." *See* Letter from Nucor Corporation, Optimus Steel LLC, Keystone Consolidated Industries, and Charter Steel (Feb. 19, 2019), available at https://access.trade.gov/ [Barcode: 3795099-01] (Gov't Ex. 4).

     <u>**Response:**</u>    Admits.  Avers that the petitioners also submitted a proprietary version of the letter onto the record of the *Changed Circumstances Review*.  *See* **Plaintiffs' Exhibit 12**.[7]

---

[6] Kiswire submits the proprietary version of its letter to Commerce.  Kiswire's notes that it has redacted from **Plantiffs' Exhibit 11** proprietary information belonging to Bekaert and Tokusen.  All proprietary information in **Plantiffs' Exhibit 11** is proprietary information belonging to Kiswire.

[7] Kiswire notes that the proprietary version of Petitioner's letter submitted in **Plantiffs' Exhibit 12** contains confidential information belonging only to Kiswire and no other party.

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**
*Kiswire Inc. and Kiswire Pine Bluff Inc. v. United States*
Consol. Ct. No. 22-00181
Plaintiffs' Response To Defendant's Cross-Motion For Summary Judgment and
Reply In Support Of Plaintiffs' Motion For Summary Judgment

**LIST OF EXHIBITS ATTACHED TO PLAINTIFFS' RESPONSE AND REPLY**

Pursuant to Rules 56 and 56.3(c) of the Rules of the U.S. Court of International Trade,

Plaintiffs Kiswire Inc. and Kiswire Pine Bluff Inc. hereby submit, as attachments hereto, the

following exhibits and evidence cited in their response to Defendant's statement of undisputed

material facts:

| Plaintiffs' Exhibit Number | Description |
|---|---|
| 10 | Memorandum from AD/CVD Operations to The File, "Discussion with U.S. Customs and Border Protection" (Mar. 20, 2019) |
| 11 | Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Response to Request for Comments" (Jan. 29, 2019) |
| 12 | Letter from Petitioners to Sec'y Commerce, "Comments on End Use Certifications" (Feb. 19, 2019) |